STATE OF MINNESOTA *ex rel.* City of Minneapolis *vs.* ST. PAUL, MINNEAPOLIS & MANITOBA RAILWAY COMPANY.

March 5, 1888.

**Mandamus—Railway Crossings—Presumption in Favor of Findings.**
Where, in *mandamus* proceedings to compel a railway company to restore a street crossing to a suitable condition for the public convenience and safety, the court found that the plan proposed by the relator was suitable, appropriate, and adequate for such purpose, and the return to this court fails to disclose the evidence upon which such finding is based, it will be presumed that the evidence on which the court acted was sufficient to justify its determination.

**Same—Contiguous Tracks of Different Companies—Change of Location.**—Where the plan includes a bridge over the contiguous tracks of two railway companies, it must necessarily have reference to the rights of each in accomplishing the general purpose of the public accommoda-

tion and convenience, and neither can be compelled to surrender its property or change its route further than is reasonably necessary for such purpose.

Proceedings by *mandamus* in the district court for Hennepin county, to compel the St. Paul, Minneapolis & Manitoba Railway Company to construct bridges and approaches over Washington avenue, Third street north, Fourth street north, and Fifth street north, in the city of Minneapolis, according to plans proposed and adopted by the relator. Similar proceedings were at the same time instituted against the Minneapolis & St. Louis Railway Company, whose tracks are near those of the respondent railway company and cross the same streets. The respondent answered, proposing a plan of crossing and for the construction of bridges and approaches different from that proposed by the relator, but which plan it alleged would be better and more convenient and suitable for the public interests and those of both railway companies. The plan proposed by the respondent involves the lowering of the tracks of both companies and the change of the location of the main track of the Minneapolis & St. Louis Railway Company. This main track is the same involved in the case of *Minneapolis & St. Louis Ry. Co.* v. *St. Paul, M. & M. Ry. Co.*, 35 Minn. 265. This proceeding was tried by *Lochren* and *Rea*, JJ., without a jury, and was heard in connection with the proceeding against the Minneapolis & St. Louis Railway Company. Upon the facts as found by the court a peremptory writ of *mandamus*, in conformity with the prayer of the relator, was directed to issue. Respondent appeals from an order refusing a new trial.

The facts as found relating to the proposed plans were in substance as follows: The allegations contained in the alternative writ, to the effect that the bridges and approaches proposed in the relator's plan are necessary, reasonable, and practicable, and have been adopted and approved by the city council of Minneapolis, and that the respondent and the Minneapolis & St. Louis Railway Company are under legal and charter obligations each to construct their share of such bridges and approaches, are true, (excepting as to an immaterial modification made by the court.) The affirmative matters of fact set out in that portion of the respondent's answer which under-

takes to set out the facts and reasons why the respondent's plan should be adopted are true, and the court adds, (in the seventh paragraph of the findings:) "And we have no doubt that the plan which is therein indicated, and more fully shown by the offer of the respondent filed at the hearing and map of respondent accompanying the same, (which plan the relator is willing to accept,) would, if accepted and conformed to by the Minneapolis & St. Louis Railway Company, be better than any other for both companies and for the public. It would make a short bridge with easy approaches on the principal thoroughfare, Washington avenue, and leave the freight-houses of both companies on the southerly side of the tracks, where the traffic between them and the business part of the city would be convenient and would not incumber any of the bridges. But the Minneapolis & St. Louis Railway does not consent to the removal of its track so as to make this plan feasible."

A memorandum was filed with the findings of fact, in which the court say: "The plan presented by the relator   *   *   *   appears to be suitable and better than any other that is suggested, if the main track of the St. Louis Company is to remain in its present location, at the crossing of these streets." "The plan and offer of the Manitoba Company, which is satisfactory to the relator, would in our judgment, if agreed to by the St. Louis Company, be better for each company, as well as for the public, than any other which has been presented. It offered to remove its own main tracks, and at its own cost the main track of the St. Louis Company, to the northerly side of its right of way at Washington avenue, lowering the grade of them all at that place 12 feet, and granting to the St. Louis Company in perpetuity the most southerly of such tracks, with the same rights thereto which it has to its present main track, in exchange for such present track of the St. Louis Company, to be taken up and removed entirely. This would make a single short bridge on Washington avenue, with easy approaches, and by giving the Manitoba a crossing for one track near Sixth street over the proposed St. Louis track for the passage of local freight; the freight-houses of both companies can, without any interference with each other, stand on the grounds of the respective companies on the southerly side of all the tracks, and

be accessible from the business part of the city without crossing tracks or bridges. The hauling of freight between such business houses and freight-houses is very extensive, and, if the proposed bridges could be relieved from it, counsel for the relator intimated its willingness to forego bridges upon Third and Fourth streets, and practically to close those streets at such crossings. It was urged by the Manitoba Company that this court has the power to adopt its plan, in these proceedings, and to require the removal of the main track of the St. Louis Company to conform to such plan. If we believed that such power existed in the court, we should not hesitate to exercise it, as for the best interest of all concerned. But the absolute rights of persons and corporations in respect to property in land are such that we think the court has no power to compel the St. Louis Company to give up its present track and take the one offered, if it does not choose to do so. If it elects to hold its present track, the court can only compel it to perform its duty to the public in respect to the street crossings."

*Benton & Roberts, W. E. Smith* and *M. D. Grover,* for appellant, cited *People* v. *N. Y. Central, etc., R. Co.,* 74 N. Y. 30.

*Seagrave Smith,* for respondent.

VANDERBURGH, J. This is a proceeding by *mandamus,* to require the appellant company to bridge certain streets in the city of Minneapolis. The appellant answered to the writ. A trial was had, and judgment was ordered in favor of the relator, substantially in conformity with the plan produced on the trial by the relator, and the company appeals. The record shows that a similar proceeding was instituted against the Minneapolis & St. Louis Company, whose tracks cross the same streets, and adjoin those of the appellant on the south. The purpose of these proceedings is to compel each of these companies to build its share of the required bridges across the railway tracks in question, with the proper approaches, abutments, etc., to the end that the streets may be restored to a suitable condition for travel and the safety of the public, as required by the charters of the companies. The foundation of the proceeding is the omission of its duty by the railroad company to restore a street crossed by its railway to a safe condition for crossing, so as not to interfere with its free and proper

use. The relator alleges such omission, and points out the changes and measures which it claims to be requisite to restore the street. It is the duty of the court to determine these questions, and, if the claims of the relator are established, the peremptory writ is to issue for the restoration of the street in conformity with the requirements of the alternative writ, or with such reasonable modifications as may be found expedient by the court, not affecting the substance of the relief. *People* v. *Dutchess, etc., R. Co.*, 58 N. Y. 152, 163. The two cases, it appears, were tried and heard together in the court below, though not formally consolidated, and thereupon the separate judgment formulated in each case, based upon the record before the court, related to and was in conformity with one general plan for bridging the space covered by the tracks of both companies, upon a hearing of all parties interested.

The appellant objected to the plan proposed by the city, and in lieu thereof proposed another which it is willing to accept, the details of which are set forth in the answer, and in its proposition, map, and plans introduced on the trial, and which it insists is the most eligible, both for the city and the railway companies interested. This plan involved a change in the location of the main track of the St. Louis Company, which crosses Washington avenue, one of the streets in question, (and which the latter company is required to bridge, under the plan of the relator,) and the removal thereof to a line designated by the appellant "to the northerly side of its land or right of way," contiguous to its own tracks, which are all to be there located beyond its proposed freight depots, which it is proposed to place on the southerly side of all the tracks of both companies. The tracks of both companies were thus to be located as near together as practicable, and the grade lowered so as to admit of a shorter bridge with easy approaches. And it is represented by the appellant that, to carry out this proposition, it had purchased land adjoining its right of way, and incurred large expense for the purpose of making such change of grade and location. It also alleges that the track in question was laid in pursuance of a contract between the companies, under which the appellant leased to the St. Louis Company, its successors and assigns, forever, the right to build, maintain, and

operate a single-track railroad upon the land of the appellant between certain designated points, and including the track in dispute. This contract also contains certain stipulations, set forth in the answer, touching the building, operation, and control of such track, and the mutual rights and obligations of the companies in respect thereto. These allegations the court finds to be true, "except that in an action between the two companies, involving the right of the appellant to remove and change the location of the track in controversy, it was on the 9th day of March, 1886, adjudged that the St. Louis Company is entitled to maintain and operate forever upon the land now occupied by its track [mentioned in paragraph 4 of the answer] a single-track railroad, and respondent [appellant here] was enjoined from removing or obstructing the same." The court further finds that in its judgment the plan proposed by the appellant here, and more fully disclosed by the offer and map filed at the hearing, (and which the relator was willing to accept,) would, if accepted and conformed to by the Minneapolis & St. Louis Company, be better than any other for both companies, and for the public. But that the St. Louis Company is unwilling to consent to the removal of its track, so as to make this plan feasible. But the court also finds in favor of the relator, in respect to the plan proposed by it, that the allegations contained in the ninth paragraph of the writ are true, to wit: "That said bridges, and approaches, and the plans and specifications for the same, as shown upon Exhibits A, B, C, and D, are necessary, reasonable, and practicable; and the same have been devised by the city engineer, and approved and adopted by the city council, and required by said city council to be constructed by said railway company." None of the evidence produced by the relator, and neither of the exhibits referred to in the last finding, are returned to this court; nor does the return show any of the evidence on the part of the appellant except the written offer above mentioned, and the evidence in the former suit between the companies, which culminated in the decision of this court in the case before referred to. It must be assumed, therefore, that the evidence was such as to justify the court in adopting the plan proposed by the city, and that the same was adequate and suitable for the purposes of securing a crossing in

conformity with the charter of the company. And this also necessarily disposes of the appellant's third, fourth, and sixth assignments of error, in respect to the number and character of the bridges, and the nature of the approaches ordered.

But the assignment of error chiefly relied on in argument is the first; that is to say, that the court erred in refusing to adopt the plan for a crossing which it found to be the best, viz., that of the appellant, and particularly in determining that it had no power to require the adoption of that plan. This is based on the seventh paragraph of the court's findings in this case, above quoted, wherein the failure of that plan is attributed to the refusal of the St. Louis Company to consent thereto; and the statement of the court in its memorandum of the reasons for its decision filed in the *St. Louis Case*, but referred to and adopted by it in this case, from which it appears that the court was of the opinion that it had no power to compel the St. Louis Company to accept the plan offered by the appellant. This is the only finding on the subject in this case. There is nothing in the case going to show that the court placed its decision on the ground that it had no power to require any change in the alignment of the track of the St. Louis Company, or that it might not require such reasonable change therein as might be found necessary to secure a suitable crossing, (for the fair inference is to the contrary,) but, having found that the plan of the city answers the end and purpose of the proceeding, it determined that it had no power to compel the St. Louis Company to make the specific change demanded by the appellant. This sufficiently appears from the record; and the error complained of is not that the court held it had no power to make any change *at all*, but that it had no power to compel the adoption of the appellant's plan. The trial court was in a better position to determine, upon an examination and comparison of all the evidence in the case, the nature, extent, and effect of the proposed change, and its determination must have been made upon full argument of counsel for both companies. For example, the evidence not being before us, the record here does not show whether the new proposed line for the St. Louis Company is located upon the old right of way of the appellant, or upon the lands lately purchased by it; nor does it show the distance between

the old and new line, except that at Washington avenue it is apparent that it must be more than 120 feet, which is indicated as the space occupied by the proposed freight depots and the intervening roadway. However desirable such a change might be as a matter of convenience and expediency,—and we have no reason to question the opinion of the court on this point,—we are unable to say upon this record (where it is found that the plan which the city proposes is suitable and sufficient) that the court was wrong in holding that it would be an unauthorized and arbitrary act on its part to require the St. Louis Company to abandon the plan of a bridge over its own original tracks, and accept the plan of the appellant, requiring a new route to reach the bridge of the latter. How far the court may in such cases, by its order or judgment, compel changes in the alignment or grades of a railway, it is not necessary to determine in this case; but we think it is evident that it would not be justified in interfering by *mandamus*, against the consent of the company, further than is reasonably or necessarily incident to the accomplishment of the main purpose of the proceeding. Where, as in this case, the railways of different companies are contiguous, and each company is required to build a distinct portion of what must constitute substantially one continuous structure, the plan adopted must necessarily have reference to the situation and rights of all in the accomplishment of the general purpose of the public accommodation, and neither can be compelled to surrender its property or change its route further than is reasonably necessary for such purpose. The plan proposed by the appellant appears to be one framed chiefly for its own accommodation, and the convenient transaction of its business,—a bridge for its own tracks, with provisions for the track of the other company and connections; and, had its interests required a different plan, still other and further changes in the line of the St. Louis Company might have been necessary. And so, under other circumstances, it might be met by a counter-plan of the other company, requiring as radical changes on its part; and, if the court could arbitrarily interfere in one case, it could in another. Nor do we see that any different rule could be applied if the defendants were united in one equitable suit. And, while each corporation will be compelled to perform its duty in the

restoration of the crossing, yet, in attempting to adjust the rights of the parties between themselves in such an action, there would be the same limitations upon the power of the court in respect to their separate legal rights to real property. The court would have to be governed by the same rule in enjoining a suitable crossing, and the modifications in grades or lines must be such as necessarily result from the application thereof. The relator brought the two cases to trial in the court below at the same time, and the trials proceeded *pari passu*, and a full hearing of the whole case has been had without objection. In this court, the relator, representing the public, is satisfied with the judgment, and insists that the question raised and chiefly argued by the appellant is one entirely between the two companies, and in no way affects the right of the city to insist upon the plan proposed by it, and therefore declines to argue that question here.

It is also urged by the appellant that the tenure of the St. Louis Company to the land upon which its track is situated is such that it has no right to change the grade of its tracks without the consent of the appellant. This is a question to be raised in the proceeding against that company; but it does not in any event go to the merits, since the court can, by operating directly upon both companies alleged to be interested in the land, compel obedience to its mandate in a proceeding against both, if it be necessary. And since, as held by the trial court, the duty of the St. Louis Company to restore the crossing is an absolute one, it will be for that company to secure such additional land or rights, or make such changes, as may be necessary to effect that result, or abandon the crossing. So far as the record discloses, no objection was raised in the court below to the form of the proceeding, or because of the absence of necessary parties; and we know of no reason why the case has not been fully and fairly investigated, and a just and legal determination of the rights of the parties reached. And while, doubtless, the public convenience and that of the companies would be promoted by an amicable arrangement or compromise between them, we are unable to say that the court mistook the law, or erred in its application to this case.

Order affirmed, and case remanded for further proceedings.

MITCHELL, J., (*dissenting.*) It seems to me that, if language means anything, there is no evading the fact that the decision of the court below is based expressly and exclusively upon the proposition that it had no power to adopt any plan of bridging these streets which would involve the necessity of the Minneapolis & St. Louis Railway Company changing the alignment of its tracks, unless it consented to do so, and that, if the court had believed that it had such power, it would, to use its own language, not have hesitated to exercise it as for the best interests of all concerned, and adopted the plan suggested by the appellant. In this, I think, the court erred. It may be true that the court might not have had the right to directly command that company to locate its track at any particular locality; but inasmuch as the duty of the company to restore the street to a condition suitable for use of the public is an absolute one, the court had a right to compel this to be done in such manner as would best subserve the interests of all parties; and if this involved the necessity of the Minneapolis & St. Louis Company moving its tracks, or securing more ground to enable it to perform its duty to the public, that is its own concern. It must perform its duty to the public, or abandon the crossing. I think the judgment should be reversed.

NOTE. A motion for reargument of this case was denied September 14, 1888.