STATE OF MINNESOTA *ex rel.* City of Minneapolis *vs.* MINNEAPOLIS & ST. LOUIS RAILWAY COMPANY and another.

September 14, 1888.

**Railway—Mandamus to Compel Bridging of Tracks at Street Crossing — Concurrent Proceedings against Two Companies. —** *Mandamus* proceedings against the St. Louis Company to compel it to bridge its tracks where they cross city streets, and to construct approaches to such bridges at one end of the same. The Manitoba railway tracks cross the same streets so near to those of the other company as to suggest the necessity, if either system of tracks should be bridged, that the bridges be made continuous over all the tracks of both companies. A like *mandamus* proceeding was pending against the Manitoba Company to compel it to construct those parts of the bridges over its tracks with approaches thereto. Both causes were required to be tried together. *Held* not to be error.

**Same — Amendment of Alternative Writ — New Parties.—**It was not error to allow an amendment of the information and alternative writ, and to bring in the Manitoba Company as a party in the proceeding against the St. Louis Company, the former company claiming some interest in one of the tracks of the latter, to which the proceeding relates.

**Same—Mandate—Manner of Restoring Street.—**The manner in which the duty of restoring the streets should be performed being uncertain, the mandate of the court may properly be specific in that regard.

**Same — Bridge over Adjoining Tracks of Two Companies.—**The fact that it is necessary, for the accomplishment of the purposes in view, that the Manitoba Company shall also bridge its tracks, is not a fatal objection to this *mandamus* proceeding against the St. Louis Company, the former company having been in fact required to construct the bridges over its tracks. *State* v. *St. Paul, M. & M. Ry. Co.*, 35 Minn. 131, and same parties, 38 Minn. 246, followed upon several points there decided.

**Same—Duty to Restore Street—Construction of Charter.—**Charter of the Minnesota Western Railroad Company (Laws 1853, *c.* 10,) construed as imposing a continuous duty as to restoring public streets to usefulness, by bridging or otherwise, when necessary.

**Same—Railroad Constructed on Street Grade.—**The fact that a railroad has once been lawfully constructed upon the grade of a street does not exempt it from bridging when that becomes necessary.

Same—Statute—Construction.—Special act of 1879, c. 185, authorizing the St. Louis Company to construct branch lines and tracks, and requiring the city to build the approaches to necessary street bridges, construed as not applicable to the already existing line of road.

Same—Statute as to Grade Crossings.—Laws 1887, c. 15, relating to highway crossings by railroads, construed as intended to provide how grade crossings should be constructed, but not as authorizing all crossings to be at grade.

Same — Proceedings before Grade of Street has been Established.— *Mandamus* proceedings may be prosecuted to determine the mode in which ·the respondent shall be required to restore a street, and to compel it to perform its duty, although the city council has not yet changed the established grade of the street to conform to the level which the relator claims should be adopted.

Same—Municipal Corporation—Resolution of Council, how Adopted. —Upon a report to a municipal council by one of its committees, recommending certain action to be taken by the council, a record of the proceedings of the council in the word "adopted" expresses the will of the body that the course recommended be pursued.

Same—Cost of Restoration of Street—Apportionment between Companies.—Each company was properly required to construct those parts of the bridges above their own systems of tracks respectively, and approaches upon their respective sides, without other apportionment between them of the cost of the entire bridge structures and approaches.

Same—Necessity of Bridge—Evidence.—In view of the necessity that bridges be built over both systems of tracks, if over either, evidence was admissible in proceedings against one company as to the extent of the use of the street crossing by the other company, showing the necessity for a bridge at the place in question.

Same—Power to Order Lateral Change in Location of Tracks.—The power of a court (if it exists) to require a considerable and important lateral change in the location of railroad tracks, (which had long before been lawfully laid across a public street,) in order to restore the street to a proper condition of usefulness, should not be exercised unless that is reasonably necessary.

Appeals by the Minneapolis & St. Louis Ry. Co., and the St. Paul, Minneapolis & Manitoba Ry. Co. from a judgment of the district

court for Hennepin county in *mandamus* proceedings brought by the city of Minneapolis and tried by *Lochren* and *Rea,* JJ.

*J. D. Springer* and *F. D. Larrabee,* for Minneapolis & St. Louis Ry. Co., appellant.

*M. D. Grover* and *Benton & Roberts,* for St. Paul, Minneapolis & Manitoba Ry. Co., appellant.

*Seagrave Smith,* for respondent.

DICKINSON, J.    For the sake of brevity we will, in this opinion, designate these two railroad corporations as the St. Louis Company and the Manitoba Company, respectively.    This *mandamus* proceeding was originally commenced against the St. Louis Company, to compel that corporation to construct bridges upon Washington avenue, Third, Fourth, and Fifth streets north, in the city of Minneapolis, above its railroad tracks, which, running easterly and westerly, now cross those streets upon the same level as the streets themselves. The work proposed also included the construction of approaches to the southerly ends of these bridges, upon these streets, above their present grade, and beyond the lands which the corporation has acquired for its purposes.    It was also contemplated that the railroad tracks should be lowered, so as to allow the bridges to be constructed with a less elevation above the grade of the streets than would otherwise be necessary.    The tracks of the Manitoba lie next northerly from and parallel with those of the St. Louis Company, and cross these streets in the same direction.    The two systems of tracks are, however, separated, a hundred feet or more, by lands which the Manitoba Company has acquired for its purposes.    When this cause came on for trial, a similar proceeding had been commenced against the Manitoba Company to compel that corporation to construct bridges over its tracks and *its* intervening lands, with approaches at their northerly ends.    These separate proceedings against the two corporations contemplated that the work thus charged upon them separately should, when performed, constitute entire and complete bridges over both systems of tracks, with proper street approaches.    The proceeding against the Manitoba Company, after judgment against it in the district court, was brought to this court by appeal.    Our decision

upon that appeal, affirming that of the district court, is reported in 38 Minn. 246, (36 N. W. Rep. 870.) During the trial of this proceeding against the St. Louis Company, it appearing that the Manitoba Company claimed some interest in one of these St. Louis tracks, and the only one of its tracks which crosses Washington avenue, it was ordered by the court, upon the motion of the relator, and with the consent of the Manitoba Company, that the relator's information and the alternative writ be amended so as to make the Manitoba Company a party respondent. The St. Louis Company objected. After the trial of the cause, the court having adjudged that a peremptory writ of *mandamus* should issue against the St. Louis Company, requiring the prosecution of the work in question, in general accordance with the plan of the relator set forth in its information, but with some particular modifications, both of the respondent corporations appealed.

The appeal of the St. Louis Company will be first considered. Without referring specifically to the 83 assignments of error made by this appellant, many of which present questions which were involved in and determined by the decision in *State* v. *St. Paul, M. & M. Ry. Co.*, 35 Minn. 131, (28 N. W. Rep. 3,) and in the case of the same parties, 38 Minn. 246, (36 N. W. Rep. 870,) we propose to direct attention to such of the subjects referred to in these assignments as seem to us to require particular mention in this opinion.

The allowance of the amendment bringing in the Manitoba Company as a party respondent was not error. The statute authorizes this practice. Gen. St. 1878, *c.* 80, § 9; Id. *c.* 66, § 43. It was proper in this case, in order that that company might be concluded in respect to the proposed changes in the track to which it had or asserted some right. At the time of the trial of this proceeding against the St. Louis Company, the like proceeding against the Manitoba Company, above referred to, being then pending, and ready for trial, the court ordered both cases to be tried together, the St. Louis Company objecting. In this we see no abuse of the discretion of the court, in view of the peculiar nature of these causes, the similarity, and to a large extent the identity, of the questions to be considered, and of the evidence bearing upon them, and of the fact that in determining

either case regard should be had to the determination in the other; for obviously neither respondent should be required to construct sections of bridges over its tracks, unless the sections over the tracks of the other company should also be constructed. There was no consolidation of the cases, but the evidence in both was received at the same time. A great deal of testimony, covering several hundred printed pages, had already been taken in the St. Louis case before a referee, which the Manitoba Company appears to have allowed to be read as evidence in its case. We think that the circumstances would have justified a joint proceeding against both companies.

It admits of no question that, in general, *mandamus* may be resorted to as a means of compelling the performance of a duty such as is claimed by the relator to rest upon this railroad company; and it has been resorted to in this state in cases like that now under consideration. *State* v. *St. Paul, M. & M. Ry. Co.*, 35 Minn. 131, (28 N. W. Rep. 3;) same parties, 38 Minn. 246, (36 N. W. Rep. 870.) It is urged by this appellant, as an objection to the writ in this case, that it prescribes particularly the manner in which the alleged duty shall be performed, instead of allowing the respondent to adopt its own plan for restoring the usefulness and safety of these streets. Where, as in this case, it has been in no manner determined, either by the law, by the circumstances of the case, or otherwise, how the alleged duty should be performed, the course suggested by this contention of the respondent would be subject to most obvious objections. It may be assumed that where it is necessary to resort to compulsory process of the courts in such cases, it is because there is a disagreement between the public authorities and the respondent as to the duty of the latter to do anything, or as to what its duty requires it to do. Neither of the parties thus opposed in interest can determine these matters of difference. It is for the courts to decide. *State* v. *St. Paul, M. & M. Ry. Co.*, 35 Minn. 131, (28 N. W. Rep. 3.) It is expedient that the thing to be done be effectually determined before a peremptory writ be issued, and that the party upon which the duty may be found to rest be required to do that specific thing, which, when done, must be accepted as the performance of its duty. If the writ were to command generally the performance of the duty of restor-

ing the street to a condition of safety and usefulness for public travel, the respondent being left to select its own plan and means of accomplishing this result, it might be found, after much time and money had been consumed in carrying out the plan adopted by the respondent, that it was not such as to accomplish the public purposes in view. The court might so decide and command the work to be undertaken anew. In *People* v. *Dutchess & Columbia R. Co.*, 58 N. Y. 152, the writ was made specific, the respondent claiming to have already performed its duty in the premises. The same reasons which suggest the propriety for making a writ specific in such a case are equally applicable in any case where the nature of the thing to be done is uncertain, and can only be determined by the judgment of the court. It was the more clearly necessary in this case that the plan for restoring these streets be judicially determined, and the writ made specific, from the fact that the purposes of the proceeding could only be accomplished by the adoption of one plan for both of these respondents, so that the work of each should be the complement of that of the other, the whole forming complete bridges adapted to the necessities of the public. Under our statute, (Gen. St. 1878, c. 80, § 9,) allowing amendments of the writ and answer as in respect to pleadings in civil actions, and prescribing that the issues be tried and further proceedings had in the same manner as in civil actions, this proceeding is sufficiently elastic to enable the court to determine upon trial the plan which ought to be adopted to accomplish the ends in view.

It is said that the accomplishment of the purposes contemplated by this proceeding is contingent upon the Manitoba Company being required to bridge its tracks in accordance with the same plan. This suggests the expediency of one proceeding against both companies; but, as the case stands, and as the Manitoba Company has been required to so proceed, that contingency is not deemed to be a reason for setting aside the determination in this case.

We deem the decisions of this court, above cited, to be decisive of several important points urged by the appellant, such as the duty to construct necessary bridges; the continuous nature of the respondent's duty in respect to the restoration of the streets; the right to

compel the sinking of its tracks for this purpose, and without compensation; the construction of street approaches extending along the streets in front of property owned by other persons; and the objection based upon the necessity for acquiring other lands, for the purpose of necessary retaining walls,—unless the result should be affected by the charter of this company, or other statutory provisions, or of other circumstances, to which we are about to refer. It is claimed, in view of the provisions of the act incorporating the Minnesota Western Railroad Company, (Laws 1853, *c.* 10, § 8,) to which this respondent traces its corporate authority, that the continuous obligation which has been decided to rest upon the Manitoba Company, in respect to restoring the usefulness of public streets, by bridging or otherwise, is not chargeable upon this respondent. The difference in the corporate laws of the two companies does not justify this position. The language and reasoning of the court in the decision referred to—35 Minn. 131, (28 N. W. Rep. 3,)—are as applicable to the provisions of this charter as to that which was construed in the above decision. The same right to construct the railroad across public highways is given in both charters. In the Manitoba charter the further duty is expressed, to "put such highway * * * in such condition and state of repair as not to impair or interfere with its free and proper use." The corresponding provision in the St. Louis charter is to "restore such road, highway, * * * to its former state, or in a sufficient manner not to impair its usefulness to the owner or to the public."

Again, it is claimed that by force of chapter 185, Sp. Laws 1879, this company is relieved from the duty of constructing the approaches to such bridges, that burden being expressly imposed upon the city. This is entitled "An act to authorize and empower the Minneapolis & St. Louis Railway Company to construct and operate a branch line of railroad from the city of Minneapolis to some point on the south shore of Lake Minnetonka, and construct and operate branch lines and spur tracks in the city of Minneapolis." Section 1 authorizes that corporation to construct "a branch line of railroad from some point on its present line in the city of Minneapolis," using any part of its already existing line for that purpose to Lake Minnetonka.

Section 2 authorizes the location and construction within the city of any "extensions and branches that may be necessary to connect said road, or its present road, with any and all railroads; * * * and may also build, maintain, and operate extensions, branches, and spur tracks from any of its lines now or hereafter built to any mills or manufactories or other industries requiring railway facilities, * * * with all necessary side tracks, turn-outs, and connections." Section 4 contains the proviso: "That the grades of the tracks of said railroad, where the same shall cross any public street in the said city of Minneapolis, shall be such as shall be designated and fixed by resolution of the common council; * * * and in case any such crossing shall involve the necessity of a bridge, to allow of any street passing under or over any such railroad, then such company shall pay the expense of the construction and maintenance of the abutments, excavations, and superstructures of such bridge, and the city shall pay the expense of the construction and maintenance of the street approaches to said bridge." The branch line, constructed under this authority, may be designated as the Pacific division of this road. This diverged from the main line, (which had been constructed long prior to 1879,) at Hopkins, a place some distance westerly from the premises in question, and ran westerly from that place. From Hopkins to Minneapolis the trains of this Pacific division run over the main line. Some of the side tracks, crossing Fourth and Fifth streets, were put in after the passage of the act of 1879. All of these tracks—the main line track and the terminal side tracks—are also used for the business of the Pacific division. The court found that none of the tracks in question were constructed as any part of the Pacific division, and had no special relation thereto more than to its main line. The court also considered the above proviso to be unconstitutional, so far as it related to the expressed obligation of the city. It is not necessary for us to pass upon the constitutionality of the law. The fact as found by the court is justified by the case, and we are of the opinion that the proviso has no applicability to the tracks in question, so as to relieve the respondent from the duty resting upon it prior to the passage of that act. The act does not disclose a purpose to change the rule of law in this respect as to the then existing

railroad; and as the proviso under consideration, in its most natural construction, is applicable merely to the line or tracks to be constructed under the authority of that act, it must be considered that as to the main line of road, and its proper side and terminal tracks then existing or thereafter constructed under its original charter, the duty of the company was unchanged by this act of 1879. The fact that the newly-authorized line used these tracks for its business would not bring them within the operation of the proviso.

Chapter 15, Laws 1887, is appealed to as authorizing the respondent to maintain its crossings upon the present grade of these streets. This act cannot be construed as intended to make that radical change in the law contended for by the respondent. We think it was intended only to apply to cases where grade crossings were proper, and not to declare that all crossings might be at grade. In such cases as are contemplated by the act it prescribes how the crossing shall be made. The terms of the law do not justify the conclusion that the legislature intended to require, or to allow, all railroad crossings to be upon the grade of the streets, in the most frequented portions of our large cities where there are many tracks in constant use, as well as at ordinary country highway crossings.

The fact that the respondent formerly laid its tracks, at a considerable expense, upon the grade of the streets, by the authority of the city council, does not exempt it from the duty of bridging when the increased use of both the railway and of the streets renders that necessary. *State* v. *St. Paul, M. & M. Ry. Co.*, 35 Minn. 131, (28 N. W. Rep. 3.)

From the fact that the city has not yet changed the grade of these streets so as to conform to the plan of the proposed bridges it does not follow that this compulsory proceeding may not be maintained. The city authorities had no power to compel these corporations to adopt the plan which they might deem best; and since, as has been decided, it could only be finally determined by judicial decision what the corporations should be compelled to do, it is obvious that any fixing of grade for these bridges, by the action of the city council, prior to the decision of the controversy as to whether the corporations were under obligation to bridge the streets, and, if so, how it

should be done, would have been speculative, and subject to such changes as might become necessary as the result of the decision of the court.   The authority of the court to determine the necessity, and the mode of carrying these streets over the tracks, necessarily involves the power to determine the elevation or grade of the bridges; and to this extent the power given by the city charter to the city council to establish and change the grades of streets must be regarded as qualified.

The evidence shows, as we consider, that the city council did adopt the plans and grade shown in the information.   These plans having been reported to the city council by a committee of that body, with the recommendation that the same be adopted by the council, and that the city attorney be instructed to commence proceedings in court for their enforcement, the action of the council thereupon is expressed in its records by the word "adopted."   This expresses the adoption by the council as its will of what was thus recommended.   Whether this was necessary, we do not decide.

Some assignments of error are based upon the fact that this appellant is charged with the duty of constructing those parts of the bridges extending over its own tracks, and the approaches on the south side, without proof that the cost of doing this is a fair, ratable proportion of the cost of the entire work charged upon both companies, and without due regard to the proportionate use made of these street crossings by the two companies respectively.   We do not think that the case is such as to have required or justified such an apportionment of the burden as is suggested by the appellant.   Although the duty of these companies, respectively, to bridge over their tracks, arises from the use of the street crossings, the extent of the burden in this respect to be borne by each company is not legally measured by the extent of that use.   The necessity being shown, the duty rests as absolutely upon the St. Louis Company to bridge its own track at Washington avenue as it does upon the Manitoba Company in respect to its four or more tracks across that street, even though the use of the latter is four or ten times greater than that of the former.   That duty being absolute, and resting upon that company independently of the duty upon the other corporation, it may be required to perform

it. And so as to the approaches, the duty is of the same absolute nature. Ordinarily, where a railroad company is required to bridge its tracks, it may also be required to make proper approaches at both ends of the bridge. Here the bridges of each of these companies over their respective systems of tracks form approaches upon one side to the bridges of the other company, so that upon each street only one graded approach is required, leading up to the bridge structure which each company is required to construct. In view of the independent nature of the obligation of each company to bridge its own tracks, we think that each company was properly required to construct the approach to its own bridge as a proper part of its own peculiar work.

We have spoken of the duties of these companies as being independent, and not joint. This is not to be confounded with the plan or manner of performance, which, as respects both companies, should, for obvious reasons, be in some sense and to some extent common, or at least similar. In this connection we refer to the point that evidence was received, against the objections of this appellant, not only of the extent of the use of these crossings by the trains of that company, but also by those of the Manitoba Company. This was properly received as bearing upon the question whether a bridging of these tracks had become necessary for the purposes of the public in the use of these streets. The circumstances were such as to justify the conclusion that, whenever a bridge across either system of tracks should become necessary, it would be necessary that it extend over both systems. As bearing upon the needs of the public for bridges upon these streets the evidence was admissible, although what the Manitoba Company might do in the use of its tracks was in no respect to be attributed to the St. Louis Company as its act. It was admissible, for the same reason that proof might have been made, as was in fact done, of the extent of travel upon the streets. *State* v. *St. Paul, M. & M. Ry. Co.*, 35 Minn. 131, (28 N. W. Rep. 3.)

As to the two south spur tracks of the St. Louis Company, leading to certain private warehouses, we see no error in the action of the court. It is left to the option of the company to sink them so as not to interfere with the bridges, or to remove them. That company cannot complain because the court gave it this option, and did not

dictate which should be done, or decide whether it was practicable to pursue the former of these alternatives.

There are other questions presented involving the sufficiency of the evidence to sustain the findings of the court, and the propriety of the action and determination of the court in matters requiring the exercise of its judgment and discretion, which we will not specifically refer to. We see no substantial error in respect to anything material to this cause. Several of the assigned errors in respect to matters relating to the proposition requiring the removal, laterally, of the St. Louis track, it is unnecessary to examine, since the determination in respect to this subject is in favor of this appellant.

Upon the appeal taken by the Manitoba Company, the only point requiring separate and particular mention is that relating to the removal of the St. Louis main track, as proposed by the Manitoba Company, and the use by the St. Louis Company, in lieu of that track, of the tracks of the Manitoba Company, more than a hundred feet north of that main track, and away from the side tracks and station grounds of the St. Louis Company. The original findings and opinion of the court below upon this point are shown in *State* v. *St. Paul, M. & M. Ry. Co.*, 38 Minn. 246, (36 N. W. Rep. 870.) Afterwards the court further found in this case that the proposed plan for a removal of the St. Louis track was satisfactory to the relator; that it was a reasonable plan, and better for each respondent, as well as for the public, than any other plan proposed to the court. And the court further stated that it would have required this change to be made were it not for the considerations expressed in this language: "But as we find that the streets can be restored to reasonably good condition for public travel, in accordance with relator's plan as modified, without disturbing the location of said main track of the St. Louis Company, it is our opinion that this court has no power to require that company to change the location of its main track so as to conform to that plan." The case now presented is not essentially different in this respect from that presented upon the former appeal of the Manitoba Company, the decision in which is above referred to. It is not necessary now, as it was not then, to decide whether, under any or under what circumstances, a railroad company can be com-

pelled to thus relinquish its right of way and go elsewhere. It is enough to say, as was said in substance in the decision last cited, and as the court below seems to have considered, that such a power, (if it exists,) must depend upon such a course being reasonably necessary to restore or preserve the proper usefulness of the street. This is a condition which the findings expressly exclude from this case. The idea expressed by the court below is that because there was no necessity for requiring such a relinquishment, the court had no power to do it. It is at least true that in such a case it ought not to do it, and in view of the decisive facts that this was not necessary in this case, and that the plan determined upon satisfies the requirements of the public, and is acceptable to the relator, representing the public interests, the decision was right. We do not think that the interest which the Manitoba Company may have in this track affects the result in this particular.

It is said that there is a clerical error in the mandate respecting the grade at a certain point. We do not understand that the record before us is such as to enable us to correct that error, and application for that purpose may properly be addressed to the court below.

Judgment affirmed.