STATE ex rel. CITY OF DULUTH v. ST. PAUL & DULUTH RAILROAD COMPANY and Others.

February 2, 1899.

Nos. 11,370—(166).

**Mandamus—Alternative Writ under G. S. 1894, § 5977—Bridging Railway Tracks at Street Crossing—Trial.**

In mandamus proceedings to compel a railway corporation to bridge its tracks where they cross a public street, the trial court, upon the hearing of a return to an alternative writ issued under G. S. 1894, § 5977, may determine from the evidence what plan ought to be adopted to best accomplish the desired object, and may entirely disregard plans and specifications for such a bridge, made a part of said writ, and may order the bridge to be constructed in accordance with new plans and specifications; and, for the purpose of determining the kind of a bridge to be built, may have expert evidence on the subject.

**Same—Plans and Specifications—Findings of Court.**

The court has the right to direct that plans and specifications for such a bridge be prepared by an expert for its use when making its findings of fact, and may adopt as its own such plans and specifications, and may direct that the bridge be built in accordance therewith.

**Same.**

That such plans and specifications are prepared by an expert in the employ of the municipality, which, through its council, institutes proceedings to compel the construction of the bridge, is not a valid objection to their adoption by the court.

### Same—Error to Incorporate New Plans in Peremptory Writ upon Ex Parte Order.

In the case at bar the court found that the plans and specifications for the proposed bridge, made a part of the alternative writ, were too indefinite and uncertain to be a basis upon which to require the same to be constructed, and then, by an ex parte order, directed that the assistant city engineer prepare and submit plans for a steel bridge to be built over the tracks at the place, of a certain width and length. Plans and specifications were made and submitted, and were thereupon adopted by the court, and incorporated into its findings of fact; the conclusions of law being that a peremptory writ should issue compelling and commanding the construction of the bridge in accordance therewith. The railway corporations against which the writ was ordered to be issued were given no opportunity to examine these plans and specifications prior to their incorporation into the findings, and in several substantial respects they were not warranted by the evidence. *Held*, that it was error to require compliance with these plans and specifications, without first giving the corporations a hearing.

### Same—Construction of Bridge over Tracks of Several Companies.

When a bridge is to be built as a unit over the tracks of two or more companies where they cross a street, the court should receive evidence as to the respective interests, and should direct what part of the structure is to be built by each company. This is to be ascertained with reference to the width of its easement in and across the street, to be determined by the width of its right of way. Each company should be ordered to build that portion of the bridge which will be over its easement. If private parties are the owners of strips of land between the ways on either side of the street, the companies owning the adjoining ways must build so as to connect, unless the intervening space exceeds in width the length of the ordinary approach, each company building half way from the line of its easement to the line of its neighbor's easement in the street. A company having its right of way upon the outside must build the approach upon its side. If tracks or ways are owned jointly, the obligation to build is a joint obligation.

Appeals by defendants St. Paul & Duluth Railroad Company and Northern Pacific Railway Company from orders of the district court for St. Louis county, Ensign, J., directing a peremptory writ of mandamus to issue, and denying a motion for a new trial. Reversed.

*Hadley & Armstrong, Charles W. Bunn* and *J. L. Washburn,* for appellants.

*J. B. Richards,* Attorney for City of Duluth, for respondent.

COLLINS, J.

These two appellants and another railway company own 12 tracks, which, at grade and in close proximity, cross, or in part cross, Garfield avenue, in the city of Duluth, an avenue which extends from Superior street southerly along what is well known as Rice's Point. Some of the tracks are owned by the companies severally, and some are owned jointly. In 1896 a resolution was passed by the city council requiring these three companies to construct a continuous steel bridge or viaduct, with the necessary abutments, from Superior street, over all of the tracks, as laid across the avenue, a distance of 2,375 feet. The companies refused to comply with the resolution, and there was a mandamus proceeding to compel a compliance.

At the hearing, evidence was introduced tending to show that public necessity did not require the tracks to be bridged at this point, and, further, not only that the plans and specifications attached to and made a part of the alternative writ were too indefinite and uncertain to be a basis upon which to require the construction of a proper bridge or viaduct, but that the structure shown thereby would be unnecessarily extensive and expensive, and in excess of the public demand. The court found as a fact that public necessity and welfare required and made necessary the construction of a steel bridge on the avenue over and across the tracks, and this finding, although challenged by appellants' counsel, was well supported by the evidence. We need say nothing further on this point. The court then found that a bridge somewhat shorter and narrower than the one proposed was required, and fixed the terminal points therefor.

As a conclusion of law it ordered the issuance of a peremptory writ of mandamus commanding and compelling the companies, naming each, at their own expense, to proceed immediately to construct and complete a steel and iron bridge or viaduct over and across these tracks, with all necessary approaches and appurte-

nances, and in accordance with certain plans and specifications prepared by the court and under its direction; and filed with the findings of fact and order for the issuance of a writ a copy of said plans and specifications, to be made a part of the writ. After an unsuccessful attempt on the part of counsel for appellants St. Paul & Duluth Company and the Northern Pacific Company to secure a modification of the findings and order, said counsel moved for a new trial. This appeal is from an order denying the motion.

1. It is urged by appellants' counsel that the proceedings should have been dismissed when the court determined that the plans and specifications made a part of the alternative writ were so indefinite and uncertain that nothing could be done thereunder.

This amounts to the contention that the peremptory writ in such a proceeding must conform to the alternative writ, and cannot depart or vary from the latter in its commands as to the length, width, size and character of the structure to be erected, although a trial has been had for the express purpose of determining what kind of a bridge is needed. There is no merit in this contention, for, as was well said in State v. Minneapolis & St. L. Ry. Co., 39 Minn. 219, 39 N. W. 153, "this proceeding is sufficiently elastic to enable the court to determine upon trial the plan which ought to be adopted to accomplish the ends in view." More than this, in each of the appellants' answers the kind and character of the needed bridge were put in issue, and the court was asked, if it should find a bridge necessary at this point, to "determine and direct definitely the nature, extent and character of such structure to be built." The trial court had full power, and it was its duty, to take evidence for the purpose of ascertaining the kind of bridge best suited for the purpose, and, if necessary, to direct that new plans and specifications be prepared for its information and for the guidance of the parties upon whom rested the obligation to build.

2. It follows that there was no error in receiving the testimony of the witness Duffies as to the proper dimensions of a structure to be built by appellants across these tracks. The court could not determine what kind of a bridge was reasonable and necessary without expert evidence, and the defiant attitude of appellants, and their evident purpose to refrain from aiding in any attempt to fur-

nish information upon this branch of the case, compelled the court to rely largely upon the evidence produced by the city.

3. This is true, also, of the claim made by appellants that because Mr. Duffies was in the employ of the city he should not have been appointed special referee to draw plans and specifications for the bridge which the court finally ordered to be built. It is also urged by counsel that the court had no power to appoint such a referee without notice to appellants, but there is nothing in this. The court was not required, even if it had the necessary skill for such work, to prepare the plans and specifications for the kind of bridge it had determined should be built, and it had the right to select any competent person to prepare for it such plans and specifications, just as it had the right to adopt plans and specifications already prepared, if found suitable and satisfactory. While in the order appointing Mr. Duffies he was designated as special referee, he was in no sense a referee, and performed none of the duties of a referee. He was nothing more than an agency employed by the court, because of his special skill and fitness, to prepare a portion of its findings of fact, his appointment being "for the purpose of preparing, under the direction, and for the use, of this court, general plans and specifications and detailed drawings." So prepared, submitted, and incorporated into the findings, the plans, specifications, detailed drawings, etc., became those of the court itself.

4. But these plans and specifications were never submitted to an inspection or examination in behalf of the appellants, and in several essential particulars they were not justified by any evidence introduced upon the trial. It seems that after the trial the court, by an ex parte order, appointed Mr. Duffies for the work above mentioned, and thereupon he proceeded to examine the locality, to make surveys, and to take soundings for the purpose of preparing suitable plans and specifications for a bridge altogether different in many ways from that specified in the alternative writ; the plans and specifications now involved being the result.

It might be that, if the appellants had been given an opportunity to be heard prior to their adoption by the court, an objection that in some substantial respects they were unwarranted by the evidence would not now be available, because the appellants could

have there pointed out wherein the evidence had been disregarded
or was wanting. And it might be that, if there was no evidence
as to matters of mere detail in the work, matters which in no
manner affected the substantial rights of appellants, there would
be no ground for complaint simply because they were not given a
hearing before plans and specifications in which these details were
fully covered were adopted. But such is not the present case. We
need not particularize wherein there was no evidence upon which
could be based certain material parts of the plans and specifica-
tions,—matters of substance, and not mere detail,—for it is un-
necessary. An opportunity to point out and to be heard upon
these very important matters should have been afforded the appel-
lants before the plans and specifications in question were incorpo-
rated into the findings, and a peremptory writ ordered.

5. As before stated, the court ordered that its mandatory writ
be issued commanding and compelling these three railway com-
panies, naming each, at their own expense to proceed immediately
to construct and complete the bridge in accordance with the plans
and specifications prepared by Mr. Duffies. No apportionment,
either of cost or parts to be constructed, was made, and counsel
for the city admits that the order must be construed as imposing
upon each of these companies the duty of constructing the entire
structure, with abutments and filled approaches. With one of the
companies—not either appellant—possessed of property of little
value, and that in the hands of a receiver, and with their distinct
track ownership and unequal interests, it will be seen that a man-
date of this character, requiring the expenditure of a large sum of
money, and upon which contempt proceedings may be predicated,
may prove to be a very serious matter to one or more of the parties.
We are unable to discover on what principle it can be sustained.
In so far as the legal obligation to bridge the tracks is concerned,
it is impossible to say that it is joint, or to see why one company
should be compelled to perform the duty of another. The obliga-
tion to build, although common, is not joint, but several, except
as to those tracks jointly owned by these appellants. And their
several obligations should have been determined and adjusted by

the court when making its findings of fact and conclusions of law, as was done in State v. Minneapolis & St. L. Ry. Co., supra.

6. This brings us to a consideration of the rule to be applied when adjusting the different obligations of these three companies, and apportioning the cost of the structure between them in accordance with their interests.

In the case just mentioned there were but two companies interested, and it was contended by one that the cost of a bridge across their tracks should be adjusted on the basis of mileage, or use of the tracks. But the court decided against this contention. It was determined that, as the duty of each company to bridge its own tracks was absolute, and independent of a like duty resting upon the other company, each must build that part of the bridge over its own tracks, the company having an outside track to build the approach adjacent thereto. At first glance it may seem inequitable for the owner of an outside track to bear all of the cost of constructing an approach upon his side, but he has a much more advantageous position for business, and, like the owner of a corner lot under some circumstances, is obliged to bear more than its percentage of the burden. The court below must determine what portion of the structure, treated as a unit, must be built by each company, and the rule for so determining is, in effect, that formulated in the case in 39 Minn. 219, stated, perhaps, with more particularity and precision.

The portion of the bridge which each company should be ordered to build must not only be that over its tracks, but must be ascertained and determined with reference to the width of its right of way, for the presumption is that each company has obtained such way with an expectation to occupy the same with tracks in the future. Therefore to compel each company to build over its own tracks and half way to the tracks of its neighbor upon either side might prove very unjust. It is the duty of each company to build that portion of the bridge which will be over the easement it has in and across the avenue of the same width as its right of way on each side. A company having its right of way and easement upon the outside must build the approach upon its side. When the tracks or ways are owned jointly, the obligation to build is a joint

one, of course, to be performed by both of the interested companies. The record fails to show the fact, but possibly private parties are the owners of strips of land between the different rights of way upon either side of the avenue. If so, it is obvious that no obligation rests upon such parties to participate in the construction of this bridge. Nor should the expense be borne by the city, save under exceptional circumstances.

Our opinion is that this burden must be placed upon the companies owning the adjoining ways, unless the intervening space should exceed in width the length of the ordinary approach to the structure. If there be such intervening spaces, each company should be required to build half way from the line of its easement to its neighbor's line, unless they should be excessive, as above stated. The court below should be advised by proper evidence as to the rights and interests of the respective parties, for the purpose of apportioning the work to be done in accordance with the rules herein stated.

The conclusions of law are set aside, and the order denying a new trial is reversed, in so far as to grant a new trial for the sole purpose of ascertaining what plans and specifications should be adopted for the construction of the bridge described in the seventeenth subdivision of the findings of fact, namely, a bridge 54 feet wide, extending over and across all of the railway tracks, and with terminals as therein fixed, and for ascertaining and apportioning the parts of said bridge to be built by each of the companies in accordance with the foregoing rules for such apportionment. When a new trial is had upon these matters, the court will amend its findings of fact so as to cover the new matter, and will then file new conclusions of law. It is so ordered.