## NEGRÓN ET AL. *v.* THE SUPERVISOR OF ELECTIONS.

### APPLICATION for a Writ of *Mandamus.*

No. 11.—Decided November 5, 1906.

MANDAMUS—APPLICATION SHOULD BE PRESENTED TO DISTRICT COURTS.—Applications for the writ of *mandamus* must be presented in the first instance to district courts unless the writ is sought to be directed against the Executive Council or some other high body, or against a lower court, in any of which cases as well as where there is any special reason for the urgent dispatch of the matter, the application may be made to the Supreme Court; thus questions of fact can be examined into with greater facility and the parties are insured of a right of appeal.

ID.—In the future the Supreme Court will not consider an application for *mandamus* presented to it on first instance unless it appears from the application that there is some sufficient reason therefor.

ID.—CAUSE OF ACTION—FAILURE TO ANSWER.—Where in an application for the writ of *mandamus* a good cause of action is shown and the respondent files no answer thereto, the application must be sustained and the peremptory writ of *mandamus* issued in accordance therewith.

ID.—JUDICIAL KNOWLEDGE.—The Supreme Court cannot take judicial knowledge of the person discharging the duties of the office of supervisor of elections of Porto Rico, because said official is not one of the principal officers of the Government mentioned in subdivision 5 of section 36 of the Law of Evidence.

ID.—The Supreme Court may take judicial knowledge of the personnel of the heads of the legislative, executive, and judicial departments of the Government of Porto Rico.

ID.—HOW APPLICATION SHOULD BE DRAWN.—Applications for *mandamus* should state the names of the parties and should comply with the other requirements provided for by subdivision 1 of section 103 of the Code of Civil Procedure, and a failure to comply with these requisites is sufficient reason for dismissing the application.

ID.—PARTY DEFENDANT.—It is well established that the writ of *mandamus* should always issue against the person and not against the officer.

ID.—SWEARING TO APPLICATION—ATTORNEY SHOULD NOT PERFORM FUNCTION OF NOTARY IN SAME CASE.—Lawyers representing either of the parties to an action should not perform the functions of notaries in the same case, for the purpose of administering oaths, and for other purposes. Such a practice is eminently improper and should not be followed.

ID.—JOINDER OF ACTIONS—DEMURRER.—In this case the application was made by two petitioners and it was alleged that one of them had been excluded from the electoral lists because he was not of age, and the other because he did not reside within the district: *Held,* That these two causes of actions cannot be joined, but as this question was not raised by demurrer objection thereto must be deemed to have been waived.

Id.—Parties Defendant.—In *mandamus* cases there should be only one defendant unless there are two or more persons who have identical interests in the subject matter; but the same writ cannot be directed to two or more respondents having separate interests.

Id.—Nature of Act Which it is Sought to Have Performed.—The writ of *mandamus* will issue to compel the performance of ministerial acts, but it cannot serve to compel the performance of acts which call for the exercise of discretion in their performance.

Id.—Prior Demand Upon Respondent to Perform the Act Sought to be Compelled.—In applications for the writ of *mandamus* it must clearly appear that the officer has been requested to perform the act which it is sought to compel him to perform by *mandamus* and that he has refused so to do, such a refusal must be either in direct terms or by conduct from which the refusal can be conclusively implied. Where it does not appear that this requisite has been complied with, the application should be denied.

The facts are stated in the opinion.

*Mr. José G. Torres* for petitioner.

Mr. Justice MacLeary delivered the opinion of the court.

This is a case of original jurisdiction. On the 30th of October, 1906, application was made in this cause for a writ of *mandamus* to Mr. Justice Figueras who ordered a rule to show cause against the defendant, returnable before the full court on the 2d of November, on which day the case came on to be heard, the plaintiffs being represented by Mr. José G. Torres, and the defendant not appearing either in person or by counsel.

This application should have been presented to the district court, and not to this court, inasmuch as it is not a question of great importance, and none of the heads of the departments are made parties. This court, nearly a year ago, announced the doctrine that only in most important cases should applications for *mandamus* be made to the Supreme Court, inasmuch as courts of first instance had jurisdiction to issue the writ. In the decision rendered in the case of *Santiago R. Palmer* v. *Gabriel Guerra,* on the 18th of December, 1905, Mr. Justice Wolf, delivering the opinion of the court, makes the following observations:

"Why the petitioner came into this court in the first instance is not clear. We think in an ordinary case, where the writ is not directed

against the Executive Council, or some other high body, or against a lower court, and where there is no particular reason of haste or expediency, application should be made to the District Court. In this manner questions of fact can be examined into with more facility, and the parties are insured of a right of appeal.

"The law of *mandamus* should only be resorted to where there is no other plain and adequate remedy, and similarly, application ought to be made to us where there is no other adequate forum. In the future we shall exercise our discretion to send the parties to the proper court, unless some good reason to the contrary appears on the face of petition. There was no such reason in the case at bar, but the court having entertained jurisdiction, will proceed to consider the matter."

The reason given for this position taken by this court is that trial courts have greater facilities for taking testimony and hearing witnesses than is afforded here. No special reason is assigned in the petition on which this proceeding is founded for presenting it to this court, rather than to one of the district courts, and the application might very well have been refused on the authority of the case above cited; but inasmuch as the rule to show cause was issued, and the case came on to be heard in this court, we will take jurisdiction and decide the matter.

Then let us examine the petition presented, because if it sets out a good cause of action, there being no answer on the part of the defendant, the prayer of the petitioners must be granted and the peremptory writ of *mandamus* be issued in compliance therewith. Section 9 of the *Mandamus* Act, Laws of 1903, page 115. *Delgado* v. *Executive Council,* decided November 1, 1904. Of course, unless the petition shows a good cause of action it is fatally defective and this court will, without waiting for a demurrer to be presented, refuse to proceed further in the matter. An application which does not comply with the law is a nullity and cannot serve as the basis of a writ of *mandamus*. (The Delgado case above cited.)

One of the first defects which strikes the attention on reading the petition is that the name of the supervisor of elections, who is made the defendant herein, is not set out in the

complaint and does not appear in the record. This court cannot judicially know who the supervisor of elections is in Porto Rico, he not being one of the principal officers of Government mentioned in paragraph 5 of section 36 of the Law of Evidence. This court can take judicial knowledge of the personnel of the heads of departments, legislative, executive and judicial of Porto Rico, and of the United States, but it is not required to make further inquiry and find out what particular person may be filling the various subordinate offices from time to time. Under section 103, paragraph 1 of the Code of Civil Procedure the complaint must contain the title of the action, name of the court and the district in which the action is brought, and the names of the parties to the action. This last requisite has not been complied with, and this would be sufficient reason for dismissing the case, if no others were afforded. It is well established by the authorities that the writ of *mandamus* should always be issued against the person and not against the officer. The Supreme Court of the United States says that:

"The writ does not reach the office. It cannot be directed to it." (*United States* v. *Boutwell*, 84 U. S., 607.)

The reason for this well established rule is evident. Suppose a peremptory writ of *mandamus* is issued, and the respondent is commanded to do certain acts which are incumbent upon him under the law and he neglects or refuses to perform one of the acts commanded in the writ. What is the remedy? He can be arrested and brought before the court in a proceeding for contempt. This could not be done unless he were made a party to the *mandamus* suit personally instead of officially. In other words it is a personal duty which is incumbent upon him, perhaps by virtue of his being the incumbent of an office, or for some other reason; but it is the person and not the officer that is affected by the writ of *mandamus*.

Section 6 of the Law of *Mandamus* requires the motion for the writ to be made upon application duly verified by affidavit. The application in this case is sworn to by the plaintiffs before their attorney, José G. Torres, Esq., who also appears to be a notary. While there may be no statute forbidding this method of verification it is not a proper practice, and should not be encouraged. Attorneys who have cases to present in court should not act as notaries in the same cases for the taking of affidavits, or any other purpose. Such action induces suspicion of the fairness or propriety which should always be exercised in the administration of an oath. Attorneys, especially in their practice before courts, should avoid every appearance of evil, and keep the skirts of their togas clean from all chance of contamination.

Another defect of the petition is that two parties join in bringing this suit. It is true that the allegations show the name of each was excluded by the supervisor of elections from the list of voters; one as alleged, because he did not reside in the district, and the other because he was not over twenty-one years of age. There is no reason whatever why these two causes of action should have been joined, and there is no authority in the law joining them. (*Wright* v. *Commissioners,* 6 Mont., 29.) Section 104 of the Code of Civil Procedure specifies in what cases several causes of action may be united in the same complaint, and section 105 of the same Code in paragraph 4 thereof makes it a cause of demurrer to the complaint if there is a defect or misjoinder of parties plaintiff or defendant, and in paragraph 5, that several causes of action have been improperly united. A mere reading of this complaint shows it to be obnoxious to these objections, but on examination of authorities we find that section 105 of our Code of Civil Procedure is identical with section 430 of the California Code. Referring to that section, and to the authorities noted thereunder in Pomeroy's work, we find that it is held in California that unless this objection is taken in due time

by demurrer or answer the defect is waived. (See *Gillam* v. *Sigman,* 29 Cal., 639.)

In like manner, and in analogy to the foregoing proposition, it has been decided that in cases of this kind there should be only one defendant, unless there are two or more persons who have identical interest in the subject matter, in which case they can be made defendants in the same case. It is said that one and the same writ cannot be directed to two or more respondents having separate interests. (See 14 Am. and Eng. Encyclopedia of Law, 219; *State* v. *Chester,* 10 N. J. L., 292; *State* v. *Minneapolis R. R. Co.,* 39 Minn., 219; *State* v. *Reno County,* 16 Pacific Rep., 337; *State* v. *Police Jury,* 3 Southern Rep., 88.)

The plaintiffs in their petition refer to section 32 of the Election Law, which reads as follows:

"On October 1 the supervisor shall close the provisional lists and no protests shall be received, nor changes made therein after that date, except upon order of a competent court. The supervisor shall then proceed to divide the provisional registration lists for each precinct alphabetically into poll lists, containing as nearly as possible three hundred names to each poll. In no case shall names beginning with the same letter be divided between two polls, unless by the special authorization of the Executive Council. The supervisor shall cause to be made three copies of each poll list, one copy to be for the use of each poll clerk on election day, and one copy to be filed with the Executive Council."

The application for this writ seems to have been based particularly upon this section of the statute. The allegation is made that the first of October has passed, and that the supervisor can no longer make changes in the lists of voters, except upon the order of a competent court. This action does not give jurisdiction to any particular court, nor does it state how nor when nor under what circumstances orders shall be made; whether a writ of *mandamus* is meant by the word "order" in this section is not clear. But even should it be regarded that a writ of *mandamus* could be issued by virtue of

this section, it would seem that application should be made to the district court, in the first instance, it being a court of general jurisdiction, and might thence come to this court by appeal. The previous section 31 of the Election Law provides that on the 16th of September the supervisor of elections shall send, by registered mail, one of each of said lists to the police headquarters at the capitals of the precincts and that the other list should be retained by the supervisor for the preparation of the poll list, as afterwards provided for in the law. There is a period of fourteen days left between the 16th of September and the 1st of October during which protests may be received and changes made in the lists, and should the supervisor refuse to make such changes, inserting names, or striking them out, as the case may be, application might be made to the proper court for a *mandamus*, or some other proper proceeding might be taken, and should such case not be decided before the 1st of October, the case thereafter could be heard and decided at any time prior to the election. This is apparently the proper meaning of this portion of the Election Law. It certainly was not intended to make the courts of justice in all cases revisory boards for the correction of the voting lists throughout the Island. Should such a policy be pursued, or such a law be enacted, the district court and this court would have time to do very little else between the 16th of September and election day. However, it is not necessary to make an authoritative construction of this statute in this particular case, and we pass that matter over for the present.

Let us turn to the *Mandamus* Act, which is found on pages 113 to 116 of the Laws of 1903. By section 2 of that act it will be seen that courts cannot, by the use of this writ of *mandamus* control judicial discretion, but it is the universal decision of courts everywhere that the performance of only ministerial acts can be compelled by *mandamus*. It is said that *mandamus* lies to compel the performance of duties purely ministerial in their nature, and so clear and specific under the law as not to call for the exercise of any discretion in their perform-

ance. (*Commissioners of Patents* v. *Whitely,* 4 Wallace, 522; *Poultney* v. *Lafayette,* 12 Pet., 472; *Kennel* v. *Stokes,* 3 How., 37; *Decatur* v. *Paulding,* 14 Peters, 497; *United States* v. *Schurz,* 102 U. S., 407; *Secretary* v. *McGarrahn,* 9 Wallace, 298; *Hamilton* v. *Tutt,* 65 Cal., 57; *Murray* v. *Morgan,* 18 Am. Dec., 372.) In considering the duties of the supervisor of elections under the law, it may well be doubted whether the acts sought to be commanded herein are such as may be designated as purely ministerial, but that question need not be decided in the disposition of this case.

It is further well established by the decisions of the most respectable courts that before a *mandamus* can issue the performance of the act must be requested of the officer, or the person whose duty it is to do it, and a refusal must have been made to perform the duty enjoined by law. The general rule is universally admitted to be that such demand and refusal on the part of the defendant are necessary before application for *mandamus* can be made and granted. This refusal must be made either in direct terms, or by conduct from which the refusal can be conclusively implied, it being due to the defendant that he should have the option of doing or refusing to do that which is required of him before making an application to the court to compel him so to do. (*People* v. *Hyde Park,* 17 Ill., 462; *Grandall* v. *Amador County,* 20 Cal., 72; *State* v. *Gibbs,* 13 Fla., 55; *State* v. *Cheraw Ry. Co.,* 16 South Carolina, 524.) This demand and refusal being necessary before the writ of *mandamus* can be issued in the first place, it must appear by proper allegations in the petition, and unless it does so appear, the petition is fatally defective. We search in vain for such an allegation in this petition. The respondent in this case has not had an opportunity to perform the act which we are called upon to command him to perform, nor has he had an opportunity of refusing to do the act the neglect of which the petitioners complain. The Supreme Court of the United States in treating upon this question uses the following language:

·"Hence it is an imperative rule that previous to making application for a writ to command the performance of any particular act, an express and distinct demand or request to perform it must have been made by the relator or prosecutor upon the defendant, and it must appear that he refused to comply with such demand, either in direct terms or by conduct from which a refusal can be conclusively inferred." (*United States* v. *Boutwell*, 84 U. S., 607. See also 2 Bouvier's Law Dictionary, p. 303, and cases there cited.)

To our minds this decision of the Supreme Court is conclusive, and we need go no further to find substantial grounds for our decision in this case.

No demand nor refusal to perform the duty claimed to be incumbent upon him has been shown or alleged in the application in this case. It may very well be that the supervisor of elections, had his attention been called to the matter, would have replaced the names of the petitioners upon the list of voters, and this suit would have been unnecessary. At any rate, before he can be brought into court and required to show cause why he has not done a particular act, he must be given the option of doing it or refusing to do it, as the law requires.

For the reasons stated the petition herein does not show a cause of action and the relief sought cannot be granted.

*Denied.*

Chief Justice Quiñones and Justices Hernández, Figueras and Wolf concurred.