STATE OF MINNESOTA, *ex rel.* City of Minneapolis, *vs.* ST. PAUL, MINNEAPOLIS & MANITOBA RAILWAY COMPANY.

April 6, 1886.

| | |
|---|---|
| 35 | 131 |
| 39 | 222 |
| 39 | 223 |
| 39 | 225 |
| 39 | 227 |
| 39 | 229 |
| 35 | 131 |
| 54 | 246 |
| 54 | 378 |
| 35 | 131 |
| 57 | 296 |
| 35 | 131 |
| 80 | 114 |
| 35 | 131 |
| 84 | 30 |

Railway—Duty of Company laying Tracks along or across a Street. The charter provides that the railway company shall have the right and authority to construct its railroad upon, along, across, under, or over any public highway, road, or street, if necessary, "but the said company shall put such highway, road, or street *in such condition and state of repair as not to impair or interfere with its free and proper use."*    *Held,* that the right of the company to lay its tracks on or across a street is not absolute, but subject to the condition that it be done so as not seriously or substantially to impair or interfere with the use of the street.    The grant is subject to the duty to put the street in such condition as to furnish the public a thoroughfare substantially as capable of safe and convenient use as before.

Same—Continuous Duty—Effect of Change in Use of Street—Maintenance of Free Use of Street.—This duty is a *continuing* one. It is not fulfilled by putting the street, at the time of building the railroad, in such condition as not to impair or interfere with its use at that time, nor by maintaining it in such condition as would have accomplished that end, had the state of things originally existing continued.    The duty has reference to future exigencies, and requires the railroad company, from time to time, to put the street in such condition as changed circumstances may render necessary.

Same—Duty to build Bridges, Approaches, etc.—Hence, although a railroad crossing on the surface of the street may have been adequate at

the time the railroad was built, yet if, by reason of the increase in the number of tracks and railway traffic, and of the increase of travel on the street, such crossing becomes unsafe and dangerous, and seriously impairs and interferes with the free and proper use of the street, it becomes the duty of the company to provide some other mode of crossing, as by carrying the street under or over their tracks. This includes the doing of whatever is needed to accomplish the required end, and which is rendered necessary to be done by reason of the presence of the railroad in the street; as, for example, the approaches to the bridge or viaduct carrying the street over or under the railway tracks.

**Same—Duty to Compensate Abutting Land-Owners injured by Approaches.**—If compensation has to be made to the owners of abutting property injured by a change of grade of the street in making lateral embankments or excavations, as approaches to the crossing, this expense must be borne by the company, it being a necessary part of the cost of putting the street in the condition and state of repair required by statute, the necessity for which was created by the presence of the railway in the street.

**Same—Power of Condemnation in Aid of Duties.**—The duty imposed upon the company carries with it the power to perform it, and, in the exercise of that power, all other needful auxiliary powers given by its charter, and of these is the power to take lands for the purposes of the corporation. The construction of a bridge or viaduct, and the approaches thereto, when necessary to carry a street under or over the railroad, is a part of the enterprise authorized by the charter.

On the petition of the relator, an alternative writ of *mandamus* was issued by the district court for Hennepin county, commanding the respondent to proceed to excavate and construct, under its tracks, a viaduct, with proper sustaining walls and iron bridge, on Fifth street north, in the city of Minneapolis, in accordance with plans prepared by the city council. The relator appeals from an order by *Young* and *Lochren,* JJ., quashing the writ.

*Judson N. Cross* and *Frank H. Carleton,* for appellant.

*Benton & Roberts,* for respondent.

MITCHELL, J.   This appeal is from an order quashing an alternative writ of *mandamus,* on the ground that the relator did not state facts sufficient to warrant the issuance of a writ.

The charter of respondent provides that "the said company shall

have the right and authority to construct their said railroad and branches upon and along, across, under, or over any public or private highway, road, street, plank-road, or railroad, if the same shall be necessary; but the said company shall put such highway, road, street, plank-road, or railroad *in such condition and state of repair as not to impair or interfere with its free and proper use.*" Laws 1857, Ex. Sess. *c.* 1, *subc.* 1, § 7. The principal question raised by the appeal is the construction to be put upon this statute as to the extent of the rights conferred, and of the duty imposed, upon the company.

The common-law rule is that where a person or corporation is given the right to build a railroad, or make a canal, across a public highway, this gives them no right to destroy it as a thoroughfare, but they are bound to restore or unite the highway at their own expense, by some reasonably safe and convenient means of passage, although the statute contains no express provision to that effect. This duty includes the doing of whatever is necessary to be done to restore the highway to such condition; as, for instance, in case of a bridge, the approaches or lateral embankments, without which the bridge itself would be useless. This duty is founded upon the equitable principle that it was their act, done in pursuit of their own advantage, which rendered this work necessary, and therefore they, and not the public, should be burdened with its expense. *Qui sentit commodum sentire debet et onus.* *King* v. *Inhabitants of Lindsey,* 14 East, 317; *King* v. *Kerrison,* 3 Maule & S. 526; *Leopard* v. *Chesapeake & Ohio Canal Co.,* 1 Gill, 222; *Northern Cent. Ry. Co.* v. *Mayor of Baltimore,* 46 Md. 425; *Eyler* v. *Co. Comm'rs Allegany Co.,* 49 Md. 257; *In re Trenton Water-Power Co.,* 20 N. J. Law, 659; *People* v. *Chicago & Alton R. Co.,* 67 Ill. 118; *Queen* v. *Inhabitants of Isle of Ely,* 15 Q. B. 827; *Paducah, etc., R. Co.* v. *Commonwealth,* 80 Ky. 147.

The provision of this statute imposing a duty on the company in favor of the public, while it is to receive a reasonable construction, must be liberally construed in favor of the public. There is no presumption that the legislature intended to limit or lessen the duty which would have existed in the absence of any provision expressly imposing it. On the contrary, their evident object was to make the duty more explicit and definite, and free from doubt. The fact

stands out prominent that the legislature intended to preserve to the public the free and proper use of highways and streets, without impairment or interference, and that the use of streets and highways by the railway company should be permitted only on condition that this right of the public should be preserved. Of course, this is not to be understood in the absolute sense that the company could do nothing that would in any degree interfere with the use of the street by the public. The statute must receive a reasonable construction, and the legislature must be presumed to have understood that the construction and operation of a railroad upon, across, under, or over a street is necessarily attended with some incidental inconvenience. What was meant was merely that the company should put the street in such condition as to furnish the public a thoroughfare reasonably safe and convenient, and substantially as capable of free and proper use as it was before. Whatever accomplishes this end is a performance of the duty; what does not is an infraction of it. Hence, in view of the manifest object of this provision in favor of the public, it is evident that the expression, " in such condition and state of repair as not to impair or interfere with its free and proper use," has reference, not merely to the physical condition of that particular part of the street actually occupied by the company with its tracks, but also to the street as a thoroughfare of public travel, and to the uses to which the company put the street in operating its road.

For example, suppose the company construct their railroad under the street, which they carry over their road by a bridge. The bridge immediately over their tracks might itself be properly built, and yet, without the necessary approaches, would be inaccessible to the public. This would not be a performance of the duty imposed by the statute. So, again, if the company constructed their tracks on the surface of the street, they might plank or pave between the tracks so as to furnish a perfectly smooth surface for the passage of travel, and yet the tracks might be so numerous, and the passage of trains so constant, as to obstruct travel across the street as effectually as if a Chinese wall were built across it. This would not be putting the street in such a condition "as not to impair or interfere with its free and proper use," within the meaning of the statute.

While the company has the right, according as its necessities or conveniences may require, to construct its tracks either on the surface of the street, or over the street, or under it, yet this right is subject to the condition that it can be done so as not to impair or interfere with the free and proper use of the street. The right to lay their tracks on the surface of the street is *sub modo;* that is, by doing it so as not to impair or interfere with the use of the street. Whatever mode they adopt, they are bound to fulfil this condition, and if it cannot be fulfilled by laying their tracks on the surface of the street, they must adopt some other plan. See *King* v. *Kerrison, supra; Johnston* v. *Providence, etc., R. Co.,* 10 R. I. 365; *People* v. *Dutchess, etc., R. Co.,* 58 N. Y. 152.

It is also clear, upon both reason and authority, that this duty is a *continuing* one. It is not fulfilled by simply putting the street, at the time the railroad is built, in such condition as not to impair or interfere with its free and proper use at that time, nor even by maintaining it in such condition as would have accomplished that end had the circumstances and conditions originally existing continued. The requirement of the statute has a wider scope than this, and has reference to all future exigencies. The legislature never intended to fix or limit the duty of the company by the necessities of the public at any one time, or under any particular state of circumstances. They intended to impose upon the company the duty, from time to time, of putting the street in such condition and state of repair as changed circumstances—such as the increased travel on the street, or increased traffic on the railroad—might render necessary to its free and proper use. A condition of the street or mode of crossing the railroad might be entirely adequate for the accommodation of the public under one condition of things, and entirely inadequate under another; and, consequently, a provision which at one juncture would be a discharge of this statutory duty, would at another amount to its violation. For example, a single track laid on the surface of a street, in a small town, where the traffic on the railroad and the travel on the street were limited, might not, and probably would not, seriously interfere with the use of the street; while numerous tracks, in constant use, thus laid upon a crowded thoroughfare of a populous city,

might almost entirely deprive the public of the use of the street. In the latter case it would be a mere technical quibble for the railway company to say that, it had performed its duty because it had put the surface of the street in proper condition, although, by reason of constantly passing trains, the public were as completely prevented from crossing it as if the street had been divided by an impassable gulf.

The duty prescribed is to keep, at all times and under all circumstances, the streets, at points where they are intercepted by the railroad, "in a condition and state of repair so as not to impair or interfere with their free and proper use;" and if this cannot be done with a surface crossing, the company must do it either by carrying their tracks under or over the highway, or the highway under or over their tracks; and the duty of thus restoring or preserving the free use of the street includes the doing of whatever is needed to accomplish the required end, and which is rendered necessary to be done by reason of the presence of the railroad in the street. *Parker* v. *Boston & Maine R. Co.,* 3 Cush. 107, 115, (50 Am. Dec. 709;) *Com.* v. *Proprietors New Bedford Bridge,* 2 Gray, 339; *Cooke* v. *Boston & Lowell R. Co.,* 133 Mass. 185; *Cott* v. *Lewiston R. Co.,* 36 N. Y. 214; *People* v. *New York Cent., etc., R. Co.,* 74 N. Y. 302; *Wellcome* v. *Inhabs. of Leeds,* 51 Me. 313; *English* v. *New Haven, etc., Co.,* 32 Conn. 240; *Burritt* v. *City of New Haven,* 42 Conn. 174; *Central R. Co.* v. *State,* 32 N. J. Law, 220; *Railroad* v. *Commissioners,* 31 Ohio St. 338; *Maltby* v. *Chicago & W. M. Ry. Co.,* 52 Mich. 108, (17 N. W. Rep. 717;) *Chicago, R. I. & P. R. Co.* v. *Moffitt,* 75 Ill. 524; *Farley* v. *Chicago, R. I. & P. R. Co.,* 42 Iowa, 234; *Manley* v. *St. Helen's Canal & Ry.,* 2 Hurl. & N. 840.

The application of these principles to the present case leads us to the conclusion that the court below erred in quashing this writ. The petition upon which the writ was issued alleges, in substance, the following facts: In 1868 the respondent constructed its road through the city of Minneapolis, and, under the authority given by its charter, laid its track upon and across Fifth street north, at the intersection of that street with Fourth avenue north. It has now nine tracks and two switch tracks on this crossing, which are in constant use by the cars and engines of respondent, which are constantly passing and re-

passing, and upon which the company is doing an immense business, running many hundred cars and scores of trains daily.   Immediately adjacent to these tracks, and south-east of them, and upon the same street crossing, the Minneapolis & St. Louis Railway Company has, under like charter rights and duties, constructed eight tracks, making in all nineteen tracks upon the crossing, and all laid on the surface of the street.   The city of Minneapolis has a population of about 100,000, (now 130,000,) many thousand of whom live in what is called North Minneapolis, north and west of the crossing.   Fifth street north is one of the main thoroughfares from North Minneapolis to the business centre of the city, over which thousands of people and hundreds of vehicles pass and repass daily, this street being the most convenient and shortest route for a large part of the inhabitants of the city between North Minneapolis and the business centre of the city.   Owing to the condition of the ground, it will be impossible for many years to have good or convenient crossings over these tracks for several blocks west of this crossing.

The great number of cars and engines so occupy this street crossing, and use up so much time in passing and repassing nearly every hour of the day, as to greatly impede, interfere with, hinder, and delay the public, and to render travel on Fifth street north very dangerous and unsafe.   The street is not now in such condition and state of repair as not to impair or interfere with its free and proper use.   The contour of the ground to the north-west of these tracks is such that it is impracticable to carry the street by bridge over the railroads.   By reason of the premises, it has become necessary, in order to put the street in such condition as not to impair or interfere with its free and proper use, to carry it, by a viaduct, under the railroad tracks, according to a plan prepared by the city council, and made a part of the application for the writ of *mandamus*.   This involves the excavation of approaches to the viaduct on either side, on one side commencing at the north-west line of Third avenue north, and on the other side at the south-east line of Fifth avenue north; also the construction of supporting walls for the soil along the sides of these excavations, and of abutments for the bridge or viaduct proper, on which to carry the railway tracks.

The city council passed an ordinance authorizing a change of grade of Fifth street north, between Third avenue north and Fifth avenue north, so as to conform to the bottom of the proposed viaduct and approaches.' This was passed since the commencement of these proceedings; but as both parties desire a decision on the merits, it was stipulated that no point should be made upon that fact. Of course, the city could not, by changing the grade of a street for some purpose of its own, impose new or additional duties upon the railroad company. Its duty is to be measured by the requirements of its charter. But in this case the sole purpose of the change of grade was to allow the construction of a proposed viaduct, the necessity for which was created by the presence of the railroad in the street. Hence the materiality of the ordinance, if it be material, consists solely in the fact that it gives the authority of the city for the change of grade necessary in the construction of the proposed viaduct. The city council then demanded of respondent that it should construct its share of this viaduct, viz., the part north-west of the dividing line between its tracks and those of the Minneapolis & St. Louis Railway Company, together with the abutments, approaches, and sustaining walls on that side. This being refused, the city applied for a *mandamus* to compel the respondent to do it. Similar proceedings have been commenced against the Minneapolis & St. Louis Railway Company to compel it to construct its share on the opposite side.

Whether respondent has in fact complied with the requirements of its charter is a question which neither it nor the city can determine absolutely without the assent of the other. Like all other matters involving a controversy concerning public duty and private right, it is to be adjusted and settled by judicial inquiry and determination. *Com.* v. *Proprietors New Bedford Bridge, supra; Cooke* v. *Boston & Lowell R. Co., supra.* Hence the decision of the city council is not conclusive upon the questions of the duty of the company to build this viaduct, or that it should be built upon the plan proposed. These are matters, if put in issue, for the determination of the court, upon the hearing. But, for the purposes of this appeal, all the allegations of the petition must be taken as true,—to wit, that the street cannot be used by the public with either safety or convenience, with

these railroad tracks crossing it on the same grade; that the only way by which the street can be put in such condition "as not to impair or interfere with its free and proper use" is by carrying it under the tracks by viaduct, on the plan proposed. If so, then the duty imposed upon the company by its charter requires them to construct this work, and the whole of it,—the abutments and approaches, as well as the bridge for their tracks. Lateral embankments or excavations necessary as approaches to a bridge or viaduct, to carry a street under or over a railway, are as much a part of the work required to be done by the company as the bridge or viaduct itself. Without the approaches, the mere passage-way under the tracks would be useless. The one is as necessary to furnish an uninterrupted thoroughfare as the other. The necessity for each is alike created by the construction of the railroad upon the street. The public derives no benefit from either which they did not enjoy before the railroad was built.

The duty imposed by the statute is, at all times and under all circumstances, to put the street "in such condition and state of repair as not to impair or interfere with its free and proper use," and whatever structures are necessary for that purpose must be erected and maintained at the expense of the company. There is no foundation in law or reason for dividing the expense between the company and the city. If the company is bound to build the viaduct under its tracks, it is equally bound to build the necessary approaches.

It is suggested that to make this excavation on Fifth street north would render the railroad company liable as a trespasser for damages to the owners of abutting lots; that the company has no power to exercise the right of eminent domain to take private property for any such purpose; and hence that a *mandamus*, if issued as prayed for, would compel the company to do an illegal act. This seems to have had much weight with the court below, who suggest that, before the company can be required to build the proposed viaduct, the city should take such action as would relieve respondent from liability for damages resulting from changing the grade of the street. Whether, upon the facts of the case, it will be necessary for the railroad company to

exercise the right of condemnation, or whether it will be liable to pay compensation to the owners of property abutting on this street, are questions not now before us, and upon which we express no opinion. But if the company has the legal right to do the work, the fact that it would involve the expense of paying compensation to property owners would be no ground for denying the writ. This expense would be just as legitimate a part of the cost of restoring the street as would the expense of making the excavation or building the bridge; and there would be no more reason for imposing this expense upon the public than that of any other part of the work; and, if necessary, we have no doubt of the power of the company under its charter to condemn private property for this purpose. The duty imposed carries with it the power to perform it, and in the exercise of that power all other needful auxiliary powers given by the charter may be exercised; and of these is the power to take lands compulsorily, when necessary for the purposes of the incorporation. When required by its charter, the construction of this viaduct and approaches for the purpose of carrying the street under its railroad is as much a part of the enterprise authorized by the charter as the railroad bed or track itself, and land taken for the former is as much taken for the purposes of the incorporation as land taken for the latter. *People* v. *Dutchess, etc., R. Co.,* 58 N. Y. 152. See, also, *Parker* v. *Boston & Maine R. Co., supra.*

We wish to remark, in conclusion, that we have found no case which is in all respects exactly like the present one, both on the facts and the language of the statute; but in all the cases, without exception, we find announced certain principles, founded, as we think, in reason and justice, which seem to lead up logically and irresistibly to the conclusion at which we have arrived. The only discordant note that we find in any case is a casual remark, which was mere *obiter,* made in *State* v. *New Haven & N. Co.,* 45 Conn. 331, 348. But an examination of that case will show that what was there *decided* is not at all in conflict with our views.

It can hardly be necessary to add that the statute, and what we have said regarding its construction, has reference only to cases where

the railroad has been constructed *in a street*, and not to cases where new streets have been laid out over or across the railroad subsequent to its construction.

The order quashing the writ is reversed, and the proceeding remanded.

GILFILLAN, C. J.   I dissent.