# September Term, 1904.

e34s 292

[No. 2650.]

THE BURLINGTON AND COLORADO RAILROAD ET AL. V.
THE PEOPLE EX REL. THE CITY OF DENVER.

[No. 2651.]

THE DENVER AND RIO GRANDE RAILROAD COMPANY V.
THE PEOPLE EX REL. THE CITY OF DENVER.

[No. 2653.]

THE UNION PACIFIC RAILROAD COMPANY V. THE
PEOPLE EX REL. THE CITY OF DENVER.

[No. 2654.]

THE COLORADO AND SOUTHERN·RAILWAY COMPANY V.
THE PEOPLE EX REL. THE CITY OF DENVER.

1. **Cities and Towns—Railroads—Viaducts—Ordinances.**

A city ordinance requiring railroad companies to construct
a viaduct or viaducts across their tracks where they cross or
extend along a street, is not invalid because its requirements
are expressed in general terms and it fails to incorporate in the
ordinance details and plans and specifications of the work to be
done in constructing such viaducts, but the ordinance may be
supplemented by plans and specifications prepared by authority
of the city council.

2. **Same—Plans and Specifications.**

Railroad companies may be compelled to construct a via-
duct across their tracks, where they cross or extend along a
street, in conformity with plans and specifications proposed by the
city, if such plans be reasonable and proper.

3. **Same.**

In a proceeding to require railroad companies to construct
a viaduct, if the plans proposed are unreasonable or impractica-
ble, or if no plans are proposed, it is the duty of the court to for-

(181)

mulate plans and order the performance of the work in accordance with such plans.

4.  Same—Mandamus.

A writ of mandamus commanding railroad companies to construct a viaduct across their tracks, which contains no plans or specifications of the work to be done, cannot be sustained.

5.  Same—Equity.

Where a viaduct is to be built across the tracks of several railroad companies and the tracks are so situated as to require joint work in constructing the viaduct across some of the tracks, mandamus is not a proper remedy to compel the railroad companies to construct the viaduct, but all the companies should be made parties to one equitable action wherein one decree could designate what part of the viaduct should be built jointly and the portion of the expense to be borne by each company, and also what part should be separately constructed by the different companies.

*Appeals from the District Court of Arapahoe County.*

By an act of the legislature approved March 11, 1899, amendatory of the charter of the city of Denver, the city council was empowered "to require railroad companies to. construct, at their own expense, such bridges and their approaches, tunnels or other conveniences at public crossings, and such viaducts and their approaches over their tracks, where the same cross or extend along the public highways or streets, and to put such streets in such. condition and state of repair as not to interfere with the free and proper use of such street or crossing, as the city council may deem necessary, and where viaduct or viaducts cross the tracks of several railroad companies, to compel them to build their proportion of a continuous viaduct or viaducts over said tracks with their approaches."—Session Laws 1889, p. 127.

On the 18th day of January, 1890, pursuant to the foregoing provisions, the following ordinance was enacted by the city council:

Section 1.  Whereas the construction and opera-

tion of a great number of railroad tracks that inter-
sect and extend along Nineteenth street in the city of
Denver has and does impede travel along said street
to a great extent and has made said Nineteenth street
dangerous for public travel thereon as a highway.

Sec. 2. Therefore all railroad companies the
tracks of which intersect or extend along Nineteenth
street in the city of Denver, are hereby required to
construct at their own expense, a good and sufficient
viaduct of the width of fifty feet over and across
their said tracks, at a height of twenty-two feet in the
clear above such tracks. Where the distance between
any two of said railroad tracks is not sufficient to
permit an approach to the viaduct over each track
from the ground to be made at a grade of not to
exceed seven per cent., then the railroad company
owning each of such tracks shall build such viaduct
at said height to a point midway between said tracks
and in such manner as to make the same one continu-
ous viaduct over such tracks. They are also hereby
required to construct at their own expense good and
sufficient approaches to such viaduct or viaducts at
a grade of not to exceed seven per cent.; and such
railroad companies, their successors and assigns,
shall thereafter at their own expense keep and main-
tain said viaduct or viaducts and the approaches
thereto in a good state of repair. Said viaduct or
viaducts to be constructed entirely of iron or steel
crossbeams and supports, set on substantial stone
foundations; the longitudinal joists between such
crossbeams to be of iron, steel or wood, and the floor
to be of wood. Such viaduct or viaducts and the
approaches thereto shall be set in said Nineteenth
street so as to leave an equal distance of said street
unoccupied on each side of the same. The said via-
duct or viaducts to be constructed with a roadway
thirty-eight feet in width for vehicles and with side-

ways six feet in width upon each side of such road-
way for foot passengers. The said approaches shall
be constructed of good and substantial stone abut-
ments and stone and earth approaches, or the said
approaches may be constructed of the same material
as the said viaduct or partly of each. The width of
said approaches to be thirty-eight feet in the clear
from the street, until the same reaches a height of at
least twelve feet above the street and for that dis-
tance the approaches shall be used only as a road-
way, and from that point until they meet the viaduct
the approaches shall be of the same width as the via-
duct, with the roadway and sideways to conform
thereto. At the point on said approaches where the
sideways begin there shall be constructed stairways
of iron or wood leading to the sidewalk below on
Nineteenth street. Said viaduct or viaducts and
approaches on the outsides thereof shall have good
and substantial iron or steel railings.

Sec. 3. The work of constructing said via-
duct or viaducts and approaches thereto, shall be
commenced in good faith within sixty days after the
passage of this ordinance and shall be actively con-
tinued thereafter until said viaduct or viaducts be
completed and ready for travel, which shall not be
later than six months after the passage of said ordi-
nance.

Sec. 4. Upon the completion of such viaduct or
viaducts and approaches, the railroad companies
whose tracks run under the same shall not be re-
quired to keep either flagman or gateman at the cross-
ings of their tracks with said Nineteenth street.

Sec. 5. Upon the completion of such viaduct or
viaducts, any of the railroad companies aiding in the
construction of such viaduct or viaducts shall have
the privilege of constructing across said Nineteenth
street under said viaduct or viaducts such new rail-

road tracks as may be necessary without any special permission of the city council first had and obtained.

On the 30th day of January, 1890, the mayor gave written notice to the appellants, whose tracks intersected or lay along Nineteenth street, to construct a viaduct in accordance with the provisions of the ordinance; but they failed to comply with the demand. On the 23rd day of May, 1890, a separate and independent proceeding against each of the appellants was commenced in the name of the people, on the relation of the city, for a writ of mandamus to compel it to construct a viaduct or viaducts as required by the ordinance. The petition was adjudged insufficient, and the cases were taken by writ of error to the supreme court, where, on the points made against the petition, the rulings below were reversed. —*People v. U. P. Ry. Co.*, 20 Colo. 186.

An answer was then made in each of the several cases. Upon the hearing, the court awarded in each case a peremptory writ of mandamus as follows:

"Now, therefore, we being willing that speedy justice should be done in this behalf to it, the city of Denver, do command and enjoin you that immediately after the receipt of this writ, you do construct at your own expense, a good and sufficient viaduct of the width of fifty feet on and along Nineteenth street over and across your said railroad track and tracks which intersect or extend along said Nineteenth street, at a height of twenty-two feet in the clear above said tracks; and where the distance between any two of your said tracks or the distance between your track and the next nearest track of any other railroad company crossing said street is not sufficient to permit an approach to the viaduct over each track from the ground to be made at a grade not to exceed seven per cent., then you shall build said viaduct at said height to a point midway between said

tracks, and in such manner so as to make the same one continuous viaduct over such tracks.

"And we do hereby further command and enjoin you to construct at your expense good and sufficient approaches to said viaduct or viaducts at a grade not to exceed seven per cent., and you, your successors and assigns, shall forever thereafter, at your and their own expense, keep and maintain said viaduct or viaducts and the approaches thereto in a good state of repair.

"And we do further command and enjoin you to construct said viaduct or viaducts entirely of iron or steel crossbeams and supports, set on substantial stone foundations, the longitudinal joists between such crossbeams to be of iron, steel or wood, and the floor to be of wood; and such viaduct or viaducts and the approaches thereto shall be set in said Nineteenth street so as to leave an equal distance of said street unoccupied on each side of the same; the said viaduct or viaducts to be constructed with a roadway thirty-eight feet in width for vehicles, and with sidewalks six feet in width upon each side of said roadway for foot passengers; the said approaches shall be constructed of good and substantial stone abutments, and stone and earth approaches, or said approaches may be constructed of the same material as the said viaduct, or partly of each; the width of said approaches to be thirty-eight feet in the clear from the street until the same reaches a height of at least twelve feet above the street, and for that distance the approaches shall be used only as a roadway, and from that point until they meet the viaduct the approaches shall be of the same width as the viaduct, with the roadway and sidewalks to conform thereto; that at the point on said approaches where the sidewalks begin there shall be constructed stairways of iron or wood, leading to the sidewalk below

on Nineteenth street; and said viaduct or viaducts and approaches on the outside thereof shall have a good and substantial iron or steel railing.

"And how you shall have executed this, our writ, make known to our said district court, at the court house at Denver. on the first day of May, A. D. 1902."

The respondents separately appealed to this court, and, the questions involved being the same, the cases were consolidated for the purposes of argument and decision.

Messrs. TELLER & DORSEY, for The Union Pacific R. R. Co.

Messrs. DINES & WHITTED, for The Colorado & Southern Ry. Co.

Messrs. WOLCOTT, VAILE & WATERMAN, for The Burlington & Colorado, and the Denver & Rio Grande R. R. Co. Mr. WILLIAM W. FIELD, of counsel.

Mr. HALSTED M. RITTER, assistant city attorney, Mr. CALVIN P. BUTLER, assistant city attorney, Mr. HARRY A. LINDSLEY, ex officio city attorney, and Mr. JOHN H. REDDIN, for appellee.

THOMSON, P. J.

It is contended that the ordinance is void for uncertainty. We assent to the proposition that before the respondents can be compelled to construct the viaduct or viaducts contemplated by the ordinance, the details of the work should be specified with such reasonable certainty that an adherence to the specifications in the performance of the duty must be accepted as a fulfillment of the requirement. But it does not follow that such details must be incorporated in the ordinance; or that the ordinance is invalid

because its requirements are expressed in general terms. Plans and specifications for the purposes of the work, prepared by the authority of the council, would supplement the ordinance and afford the requisite guidance. These however must be practicable and reasonable. The arbitrary will of the council respecting them would not be final; so that, at last, in case of resistance to the requirements, a settlement of the details would devolve upon the courts.

When this case was before the supreme court in *People v. U. P. Ry. Co.,* 20 Colo. 186, only two questions were raised: One, that the petition did not show a reasonable public necessity for the viaducts; and the other, that it appeared from the petition and the ordinance that the city proposed to continue and maintain Nineteenth street at grade, as a public thoroughfare across the tracks of the respondents, and still compel respondents to construct without compensation a new and different thoroughfare over the same tracks. Both points were determined against the respondents; but the questions we are now called upon to consider were not before that court or passed upon by it. However, the following observations occur in the course of the opinion:

"In this case there are four defendants, and if it were left to them to determine the character of the structure to be erected, it is not at all probable that any plan would meet with the approval of all. Hence the advisability of having a plan prepared by the city in the first instance. And in case the plan proposed is found feasible and adequate for the purpose, the erection of the viaduct in accordance therewith may be enforced, provided a reasonable necessity therefor is shown to exist."

By the language quoted, the necessity of a plan is recognized, and the advisability of its being pre-

pared by the city in the first instance, suggested; but whether the performance of the work in accordance with a plan so prepared could be compelled, is made dependent on the character of the plan. The following among other cases are cited with approval in the opinion:—*State v. St. Paul, M. & M. Ry. Co.*, 35 Minn. 131; *The State v. Minneapolis & St. Louis Ry. Co.*, 39 Minn. 219.

As these cases are relied upon by the supreme court, and as they deal with questions which are now presented to us, it will be well to ascertain exactly what they decide. Both were cases in which mandamus was brought to compel the construction by railroad companies of viaducts. The city of Minneapolis asserted its right to the compulsory process sought, by virtue of provisions in the charters of the companies which gave them the right to construct their railroads across any public highway, but coupled the privilege with a requirement expressed in terms more general than those employed in this ordinance, to put any highway so crossed in such condition as not to impair its usefulness to the public. The tracks of the respondents in both cases crossed the same streets, and were approximately parallel with each other; and the suits were brought to compel each to construct bridges across its tracks so that the work when completed, should constitute an entire and complete viaduct over both systems of tracks. In the first case the alternative writ commanded the respondent to construct a viaduct in accordance with plans prepared by the city council. The case went to the supreme court by appeal from an order quashing the writ on the ground that the relator did not state facts sufficient to warrant the issuance of a writ. Speaking concerning the finality of the action of the city, the court said:

"Whether respondent has in fact complied with

the requirements of its charter is a question which neither it nor the city can determine absolutely without the assent of the other. Like all other matters involving a controversy concerning public duty and private right, it is to be adjusted and settled by judicial inquiry and determination. Hence the decision of the city council is not conclusive upon the questions of the duty of the company to build this viaduct, or that it should be built upon the plan proposed. These are matters, if put in issue, for the determination of the court, upon the hearing.''

In the second case, no plan appears to have been suggested by anyone prior to the commencement of the action. The respondent in the first case was brought into the second, and the two were heard together. Relative to the necessity that the peremptory writ be specific, the court said:

"It admits of no question that, in general, mandamus may be resorted to as a means of compelling the performance of a duty such as is claimed by the relator to rest upon this railroad company; and it has been resorted to in this state in cases like that now under consideration.—*State v. St. Paul, M. & M. Ry. Co.*, 35 Minn. 131 (28 N. W. Rep. 3); same parties, 38 Minn. 246 (36 N. W. Rep. 870). It is urged by this appellant, as an objection to the writ in this case, that it prescribes particularly the manner in which the alleged duty shall be performed, instead of allowing the respondent to adopt its own plan for restoring the usefulness and safety of these streets. Where, as in this case, it has been in no manner determined, either by the law, by the circumstances of the case, or otherwise, how the alleged duty should be performed, the course suggested by this contention of the respondent would be subject to most obvious objections. It may be assumed that where it is necessary to resort to compulsory process

of the courts in such cases; it is because there is a disagreement between the public authorities and the respondent as to the duty of the latter to do anything, or as to what its duty requires it to do. Neither of the parties thus opposed in interest can determine these matters of difference. It is for the courts to decide.—*State v. St. Paul, M. & M. Ry. Co.*, 35 Minn. 131 (28 N. W. Rep. 3). It is expedient that the thing to be done be effectually determined before a peremptory writ be issued, and that the party upon which the duty may be found to rest be required to do that specific thing, which, when done, must be accepted as the performance of its duty. If the writ were to command generally the performance of the duty of restoring the street to a condition of safety and usefulness for public travel, the respondent being left to select its own plan and means of accomplishing this result, it might be found, after much time and money had been consumed in carrying out the plan adopted by the respondent, that it was not such as to accomplish the public purposes in view. The court might so decide and command the work to be undertaken anew. In *People v. Dutchess & Columbia R. Co.*, 58 N. Y. 152, the writ was made specific, the respondent claiming to have already performed its duty in the premises. The same reasons which suggest the propriety for making a writ specific in such a case are equally applicable in any case where the nature of the thing to be done is uncertain, and can only be determined by the judgment of the court. It was the more clearly necessary in this case that the plan for restoring these streets be judicially determined, and the writ made specific, from the fact that the purposes of the proceeding could only be accomplished by the adoption of one plan for both of these respondents, so that the work of each should be the complement of

that of the other, the whole forming complete bridges adapted to the necessities of the public."

In *People v. Dutchess & Columbia R. R. Co.,* referred to above, it was contended by the appellant that the peremptory writ could go no further than, in general terms, to direct a restoration of the highway. The judgment of the court upon the proposition will be found in the following extract from the opinion:

"The second point made by the appellant is, that the peremptory writ may do no more than, in general terms, to direct it to restore the highway. It is claimed that there is a discretion reposed in it by the statute as to the manner in which the restoration shall be effected; that it is an engineering question, which the court cannot determine in a particular manner, when there may be other ways equally as good in result. It is true that the party who is to do an act has, in general, the election of the manner of doing it. It is as true that, if he elects a manner that is not effectual, and the act remains substantially undone, he is still under his liability to do it. He has no discretion whether he will or will not do the act. If he attempts to do it and does it not, still the court may command that he do it. In this case the appellant was under the duty to restore the highway. It essayed to do that duty in a way that the court below adjudges was not effectual. An alternative mandamus was issued, commanding it to restore the highway, and to take new action effectual to that end. It returned that it had restored the highway before the issuing of the writ. It would be idle to issue a peremptory writ again commanding it to restore the highway, and stopping with the reiteration of the general command only. The court having ascertained, by the proofs of the parties, in what respects the action of the appellant has failed, may properly

point out to it how to act so as not to fail again. Though in the first instance there may be a discretion with the appellant, it is not that which is known as judicial. That may not be commanded by mandamus to act in a certain way. The discretion here is a ministerial one. The act of restoration must be done. If the discretion as to mode of doing it is so well exercised as that the restoration is complete, that is well. The object of this action is to test that. The appellant insists that it had well exercised it. The court has determined that it had not. The court will and should point out to it, in what it has failed, and direct it particularly what it must do so as not to fail again.''

The conclusions we have reached are that a specific plan of the work need not be set forth in the ordinance; that if a feasible and proper plan be proposed by the city, the construction of the viaduct may be compelled in conformity with it; that in case the court should find the plan unreasonable or impracticable, or in case no plan at all should be submitted, it would be the duty of the court after sufficient inquiry and investigation, to formulate a plan for itself, and order the performance of the work in accordance with such plan; and that a writ which peremptorily requires the execution of an enterprise involving a complication and variety of detail, without any plan upon which to work, will not be sustained.

The writ awarded in each of these cases is no more definite than the ordinance. It does not direct the work to be done in accordance with any specific plan. It commands each respondent to construct a good and sufficient viaduct across its tracks; but what would be good and sufficient, is matter of opinion; and individual opinions vary. Nor is the uncertainty of the meaning of this command removed by the particulars which follow it. The viaduct is to be fifty

feet in width and twenty-two feet in height above the tracks. So far as the elevation and dimension of the structure are concerned, the writ is definite enough; but otherwise it is utterly uncertain. The viaduct is to be constructed entirely of iron or steel crossbeams, and supports set on substantial stone foundation; the longitudinal joists between the crossbeams are to be iron, steel or wood; and the floor is to be of wood. It is upon these things which enter into the structure, and the position they occupy, that its goodness and sufficiency depend. The writ gives no directions as to the dimensions of the crossbeams, supports, longitudinal joists or foundations. The character of the stone to be used in the foundations is not specified. Nothing is said as to the thickness of the floor, or the nature of the wood, whether durable or otherwise, of which it is to be constructed. The same objection applies to the longitudinal joists, if made of wood. There is no reference to distances between supports, or distances between joists. All these matters are important. They have intimate relation to the goodness and sufficiency of the work; and yet with respect to them, the respondents are left at sea. In this absence of specification, if they should undertake the work, they could have no assurance that after its completion it would be accepted. They might regard it as good and sufficient, but it might be adjudged insufficient. For another reason the writ is in this regard fatally defective. Where approaches are impracticable, the several viaducts to be built by the respondents are, when completed, to constitute one continuous viaduct. Each respondent might adopt a different plan, and while its work might be well done, the whole when finished might be a heterogeneous and inconsistent structure. That the purpose of the ordinance may be accomplished, the entire work should be done upon one plan formulated before-

hand.—*State v. Minneapolis & St. Louis Ry. Co., supra.*

But there is another difficulty in the way of these proceedings which is, if possible, still more serious. The situation, with relation to each other, of the tracks belonging to the different respondents, is, in localities, such that in the construction of the viaduct, independent action by any one of the respondents is impracticable. We will illustrate our meaning by a particular instance: Wewatta street crosses Nineteenth at right angles. Extending along Wewatta and crossing Nineteenth, are three railroad tracks laid approximately parallel to, and in close proximity with, each other. The northernmost track belongs to The Burlington & Colorado Railroad Company, the central to The Denver & Rio Grande Railroad Company, and the southernmost to The Union Pacific Railroad Company. As shown by the evidence, these several tracks are so close to each other that there is no room between them for foundations for viaduct supports, and such supports would themselves interfere with the passage of cars. Extending along Nineteenth street, and crossing Wewatta and the several tracks of which we have spoken, is a railroad track belonging to The Colorado & Southern Railway Company. Now each company is commanded to build a viaduct over its railroad tracks which intersect or extend along Nineteenth street; and, where the distance between its track and the nearest track of another railroad company crossing the street is not sufficient to permit the prescribed approach to the viaduct, to build the viaduct to a point midway between the tracks. Where there is no room for approaches, the viaduct must rest upon supports. The Denver & Rio Grande Company is thus commanded to build a section of the viaduct over its track, at the crossing of Nineteenth and Wewatta,

from a point midway between its track and the track of the Union Pacific on one side, and that of the Burlington and Colorado on the other. But there is not only no room for approaches, but no room for foundations for supports, or for the supports themselves. It must therefore unite the section built by it with the sections built over the two other lines of track crossing Wewatta street in such manner that the several sections shall sustain each other, and together constitute a single structure. The owners of the other two lines are, on the sides next its track, in the same situation with it. But conditions are still further complicated by the presence of the track of The Colorado and Southern Railway Company extending along Nineteenth street, and, within the limits of that street, crossing the other three tracks. The mandate in its own case includes the building of a viaduct over those three tracks which shall fill exactly the same space with that to be built by the other companies. But two bodies cannot occupy the same space at the same time. It is manifest that none of these companies can, independently of the others, build the portion of the viaduct required of it. Yet the mandate of the court is, that each shall do that very thing. As the cases are distinct, and the judgment in each wholly disconnected from that in the others, the requirement against each respondent that it do independently that which it cannot do independently, would alone necessitate reversal of all the judgments. It is evident that a viaduct across Wewatta street, such as that described in each writ, must, if constructed at all, be constructed by all the companies jointly. But co-operation between them cannot be compelled except in a proceeding to which they are all parties. If their tracks were parallel, or approximately parallel, and sufficiently far apart, the difficulty attending the present situation would not

exist.   Each party could separtely construct its own portion between the proper lines, and there the several portions would join upon each other.   A continuous viaduct would thus be obtained.   And in case of refusal of any one of the parties to act, it might be compelled to do so in a proceeding against it alone.   But where the work required must be done jointly, and at joint expense, separate suits are inadequate to the accomplishment of the purpose.

But we do not think the end sought in these actions can be attained by proceedings in mandamus. Mandamus is a purely legal remedy; and the constitution of a court of law disables it from administering the variety of relief demanded by the conditions which are here shown to exist.   A court of equity, having all the parties before it, can, in a single decree, provide for joint action where that is necessary, determining the proportion of the expense to be borne by each of the parties; and for individual action where joint action is not necessary; and so adjust the rights and duties of the parties that each shall bear the burden, and only the burden, justly chargeable to it.   To award such relief is beyond the jurisdiction of a court of law.

The judgments must be reversed.

*Reversed.*

#### On Petition for Rehearing.

*Per Curiam.*—An application for a rehearing of the foregoing causes has been presented, the chief ground of which is that the opinion, in so far as it holds that, to accomplish the purposes of the proceedings, resort must be had to a court of equity, is in conflict with the opinion of the supreme court in *People v. U. P. Ry. Co.,* to which we have referred. If such be the case we are bound to allow the petition, because the opinions of that court are conclusive on

us. But upon a careful re-examination of the opinion in that case, we are unable to discover any variance between the views of the supreme court and our own. The only questions considered by it related to the sufficiency of the petitions, and nothing appeared on their face to indicate the situation which the evidence disclosed. For aught shown by them, mandamus was the proper remedy, and the purpose of the proceedings could have been accomplished by separate judgments against the several respondents. But upon the trial a state of facts appeared which rendered independent proceedings inadequate and impracticable for the attainment of the object sought, and from which it appeared that the relief to which the relator was entitled could not be awarded by a court of law. That the supreme court was not of the opinion that these actions could be maintained no matter what the situation disclosed by the evidence might be, is, we think, clearly apparent from the following language with which the opinion closes:

"When the case is fully presented by proper pleadings and proofs, it will be for the trial court upon the facts and circumstances as they then appear, and the law applicable thereto, to determine whether the city is entitled to the relief sought by these actions."

The application for a rehearing will be denied.