Thomson, P. J.
It is contended that the ordinance is void for uncertainty. We assent to the proposition that before the respondents can be compelled to construct the viaduct or viaducts contemplated by the ordinance, the details of the work should be specified with such reasonable certainty that an adherence to the. specifications in the performance of the duty must be accepted as a fulfillment of the requirement. But it does not follow that such details must be incorporated in the ordinance; or that the ordinance is invalid *188 because its requirements are expressed in general terms. Plans and specifications for the purposes of the work, prepared by the authority of the council, would supplement the ordinance and afford the requisite guidance. These however must be practicable and reasonable. The arbitrary will of the council respecting them would not be final; so that, at last, in case of resistance to the requirements, a settlement of the details would devolve upon the courts.
"When this case was before the supreme court in People v. U. P. Ry. Co., 20 Colo. 186, only two questions were raised: One, that the petition did not show a reasonable public necessity for the viaducts; and the other, that it appeared from the petition and the ordinance that the city proposed to continue and maintain Nineteenth street at grade, as a public thoroughfare across the tracks of the respondents, and still compel respondents to construct without compensation a new and different thoroughfare over the same tracks. Both points were determined against the respondents; but the questions we are now called upon to consider were not before that court or passed upon by it. However, the following observations occur in the course of the opinion:
“In this case there are four defendants, and if it were left to them to determine the character of the structure to be erected, it is not at all probable that any plan would meet with the approval of all. Hence the advisability of having a plan prepared by the city in the first instance. And in case the plan proposed is found feasible and adequate for the purpose, the erection of the viaduct in accordance therewith may be enforced, provided a reasonable necessity therefor is shown to exist. ’ ’
By the language quoted, the necessity of a plan is recognized, and the advisability, of its being pre *189 pared by the city in the first instance, suggested; but whether the performance of the work in accordance with a plan so prepared could be compelled, is made dependent on the character of the plan. The following among other cases are cited with approval in the opinion: — State v. St. Paul, M. & M. Ry. Co., 35 Minn. 131; The State v. Minneapolis & St. Louis Ry. Co., 39 Minn. 219.
As these cases are relied upon by the supreme court, and as they deal with questions which are now presented to us, it will be well to ascertain exactly what they decide. Both were cases in which mandamus was brought to compel the construction by railroad companies of viaducts. The city of Minneapolis asserted its right to the compulsory process sought, by virtue of provisions in the charters of the companies which gave them, the right to construct their railroads across any public highway, but coupled the privilege with a requirement expressed in terms more general than those employed in this ordinance, to put. any highway so crossed in such condition as not to impair its usefulness to the public. The tracks of the respondents in both cases crossed the same streets, and were approximately parallel with each other; and the suits were brought to compel each to construct bridges across its tracks so that the work when completed, should constitute an entire and complete viaduct over both systems of tracks. In the first case the alternative writ commanded the respondent to construct a,- viaduct in accordance with plans prepared by the city council. The case went to the supreme court by appeal from an order quashing the writ bn the ground that the relator- did not state facts sufficient to warrant the issuance of a writ. Speaking concerning the finality of the action of the city, the court said:
“Whether respondent has in fact complied with *190 the requirements of its charter is a question which neither it nor the city can determine absolutely without the assent of the other. Like all other matters involving a controversy concerning public duty and private right, it is to be adjusted and settled by judicial inquiry and determination. Hence the decision of the city council is not conclusive upon the questions of the duty of the company to build this viaduct, or that it should be built upon the plan proposed. These are matters, if put in issue, for the determination of the court, upon the hearing. ’ ’
In the second case, no plan appears to have been suggested by anyone prior to the commencement of the action. The respondent in the first case was brought into the second, and the two were heard together. Relative to the necessity that the peremptory writ be specific, the court said:
“It admits of no question that, in general, mandamus may be resorted to as a, means of compelling the performance of a duty such as is claimed by the relator to rest upon this railroad company; and it has been resorted to- in this state in eases like that now under consideration. — State v. St. Paul, M. & M. Ry. Co., 35 Minn. 131 (28 N. W. Rep. 3); same parties, 38 Minn. 246 (36 N. W. Rep. 870). It is urged by this appellant, as an, objection to the writ in this case, that it prescribes particularly the manner in which the alleged duty shall be performed, instead of állowing the respondent to adopt its own plan for restoring the usefulness and safety of these streets.- Where, as in this case, it has been in no manner determined, either by the law, by the circumstances of the case, or otherwise, how the alleged duty should be performed, the course suggested by this contention of the respondent would be subject to most obvious objections. It may be assumed that where it is necessary to resort to compulsory process *191 of the courts in such-cases', it is because there is a disagreement between the public authorities and the respondent as to the duty of the latter to-do anything, or as -to what its duty requires it to do. Neither of the parties thus opposed in interest can determine these matters of difference. It is for the courts to decide. — State v. St. Paul, M. & M. Ry. Co., 35 Minn. 131 (28 N. W. Rep. 3). It is expedient that the thing to be done be effectually determined before a peremptory writ be issued, and that the party upon which the duty may be found to rest be required to do that- specific thing; which, when done, must be accepted as the performance of its duty. If the writ were to command generally the performance of the duty of restoring the- street to a condition of safety and usefulness for public travel, the respondent being left to select its own plan and means of accomplishing this result, it might be found, after much time and money had been consumed in carrying out the plan adopted by the respondent, that it was not such as to accomplish the public purposes in view. The court might so decide and command the work to be undertaken anew. In People v. Dutchess & Columbia R. Co., 58 N. Y. 152, the writ was made specific, the respondent claiming to have- already performed its duty in the premises. The same reasons which suggest the propriety for making a writ specific in. such a case are equally applicable in any case where the nature of the thing to be done is uncertain, and can only be determined by the judgment of the court. It was the more clearly necessary in this case that the plan for restoring these streets be judicially determined, and the writ made specific, from the fact that the purposes of the proceeding could only be accomplished by the adoption of one plan for both of these respondents, so that the work of each should be the complement of *192 that of the other, the whole forming complete bridges adapted to the necessities of the public.”
In People v. Dutchess & Columbia R. R. Co., referred to above, it was contended by the appellant that the peremptory writ could go no further than, in general terms, to direct a restoration of the highway. The judgment of the court upon the proposition will be found in the following extract from the opinion:
‘ ‘ The second.point made by the appellant is, that the peremptory writ may do no more than, in general terms, to direct it to restore the highway. It is claimed that there is a. discretion reposed in it by the statute as to the manner in which the restoration shall be effected; that it is an engineering question, which the court cannot determine in a particular manner, when there may be other ways equally as good in result. It is true that the party who is to do' an act has, in general, the election of the manner of doing it. It is as true that, if he elects a manner that is not effectual, and the act remains substantially undone, he is still under his liability to do it. He has no discretion whether he will or will not do the act. If he attempts to do it and does it not, still the court may command that he do it. In this case the appellant was under the duty to restore the highway. Tt essayed to do that duty in a way that the court below adjudges was not effectual. An alternative mandamus was issued, commanding it to restore the highway, and to take new action effectual to that end. It returned that it had restored the highway before the issuing of the writ. It would be idle to issue a peremptory writ again commanding it h> restore the highway, and stopping with the reiteration of the genera] command only. The court having ascertained, by the proofs of the parties, in what respects the action of the appellant has failed, may properly *193 point ont to it how to act so as not to fail again. Though in the first instance there may he a discretion with the appellant, it is not that which is known as judicial. That may not be commanded by mandamus to act in a certain way. The discretion here is a ministerial one. The act of restoration must be done. If the discretion as to mode of doing it is so well exercised as that the restoration is complete, that is well. The object of this action is to test that. The appellant insists that it had well exercised it. The court has determined that it had not. The court will and should point out to it, in what it has failed, and direct it particularly what it must do so as not to fail again.”
The conclusions we have reached are that a specific plan of the work need not be set forth in the ordinance; that if a feasible and proper plan be proposed by the city, the construction of the viaduct may be compelled in conformity with it; that in case the court should find the plan unreasonable or impractic-j able, or in case no plan at all should be submitted, it would be the duty of the court after sufficient inquiry and investigation, to formulate a plan for itself, and order the performance of the work in accordance with such plan; and that a writ which peremptorily requires the execution of an enterprise involving a complication and variety of detail, without any plan upon which to work, will not be sustained.
The writ awarded in each of these cases is no more definite than the ordinance. It does not direct the Work to bei done in accordance with any specific plan. It commands each respondent to construct a good and sufficient viaduct across its tracks; but what would be good and sufficient, is matter of opinion; and individual opinions vary. Nor is the uncertainty of the meaning of this command removed by the particulars which follow it. The viaduct is to be fifty *194 feet in -width and twenty-two feet in height above the tracks; So far as the elevation and dimension, of the structure are concerned, the writ is definite enough; but otherwise it is utterly uncertain. The viaduct is to be constructed entirely of iron or steel crossbeams, and supports set on substantial stone foundation; the longitudinal joists between the crossbeams are to be iron, steel or wood; and the floor is to be of wood. It is upon these things which enter into the structure, and the position they occupy, that its goodness and sufficiency depend. The writ gives no directions as to the dimensions of the crossbeams, supports, longitudinal joists or foundations. The character of the stone to be used in the foundations is not. specified. Nothing is said as to the thickness of the floor, or the nature of the wood, whether durable or otherwise, of which it is to be constructed. The same objection applies to the longitudinal joists, if made of wood. There is no reference to distances between ^supports, or distances between joists. All these matters are important. They have intimate relation to the goodness and sufficiency of the work; and yet with respect to them, the respondents are left at sea. In this absence of specification, if they should undertake the work, they could have no assurance that after its completion it would be accepted. They might regard it as good and sufficient, but it might be adjudged insufficient. For another reason the writ is in this regard fatally defective. Where approaches are impracticable, the several viaducts to be built by the respondents are, when completed, to constitute one continuous viaduct. Each respondent might adopt a different plan, and while its work might be well done, the whole when finished might be a heterogeneous and inconsistent structure. That'the purpose of the ordinance may be accomplished, the entire work should be doné upon one plan formulated before *195 hand. — State v. Minneapolis & St. Louis Ry. Co., supra.
But there' is another difficulty in the way of these proceedings which is, if possible, still more serious. The situation, with relation to each other, of the tracks belonging to the different respondents, is, in localities, such that in the construction of the viaduct, independent action by any one of the respondents is impracticable. We will illustrate .our meaning by a particular instance: Wewatta street crosses Nineteenth at right angles. Extending along Wewatta and crossing Nineteenth,'are three railroad tracks laid approximately parallel to, and in close proximity with, each other. The northernmost track belongs to The Burlington & Colorado Railroad Company, the central to The Denver & Rio Grande Railroad Company, and the southernmost to The Union Pacific Railroad Company. As shown by the evidence, these several tracks are so close to each other that there is no room between them for foundations for viaduct supports, and such supports would' themselves interfere with the passage of cars. Extending along Nineteenth street, and crossing Wewatta and the several tracks of which we have spoken, is a railroad track belonging to The Colorado & Southern Railway Company. Now each company is commanded to build a, viaduct over its railroad tracks which intersect or extend along Nineteenth street; and, where the distance between its track and the nearest track of another railroad company crossing the street is not sufficient to permit the prescribed approach to the viaduct, to build the viaduct to a point midway between the tracks. Where there is no room for approaches, the viaduct must rest upon supports. The Denver & Rio Grande Company is thus commanded to build a section of the viaduct over its track, at the crossing of Nineteenth and Wewatta, *196 from a point midway between its track and the track of the Union Pacific on one side, and that of the Burlington and Colorado on the other. But there- is not only no room for approaches, but no room for foundations for supports, or for the supports themselves. It must therefore unite the section built by it with the sections built over the two other lines of track crossing Wewatta. street in such manner that the several sections shall sustain each other, and together constitute a single structure. The owners of the other two lines are, on the sides next its track, in the same situation with it. But conditions are still further complicated by the presence of the track of- The Colorado and Southern Railway Company extending along Nineteenth street, and, within the limits of that street, crossing the other three tracks. The mandate in its own case includes the building of a viaduct over those three tracks which shall fill exactly the same space with that to be built by the other companies. But two bodies cannot occupy the same space at the same time. It is manifest that none of these companies can, independently of the others, build the portion of the viaduct required of it. Yet the mandate of the court is, that each shall do that very thing. As the cases are distinct, and the judgment in each wholly disconnected from that in the others, the requirement against each respondent that it do- independently that which it cannot do independently, would alone necessitate reversal of all the judgments. It is evident that a viaduct across Wewatta street, such as that described in each writ, must, if constructed at all, be constructed by all the companies jointly. But co-operation between them cannot be compelled except in a proceeding to which they are all parties. If their tracks were parallel, or approximately parallel, and sufficiently far apart, the difficulty .attending the present situation would not *197 exist. Each party could separtely construct its own portion between the proper lines, and there the several portions would join upon each other. A continuous viaduct would thus be obtained. And in case of refusal of any one of the parties to act, it might be compelled to do so in a proceeding against it alone. But where the work required must be done jointly, and at joint expense, separate suits are inadequate to the accomplishment of the purpose.
But we do not think the end sought in these actions can be-attained by proceedings in mandamus. Mandamus is a purely legal remedy; and the constitution of a court of law disables it from administering the variety of relief demanded by the conditions which are here shown to exist. A court of equity, having all the parties before it, can, in a single decree, provide for joint action where that is necessary, determining the proportion of the expense to be borne by each of the parties; and for individual action where joint action is not necessary; and so adjust the rights and duties of the parties» that each shall bear the burden, and only the burden, justly chargeable to it. To award such relief is beyond the jurisdiction of a court of law.
The judgments must be reversed.

Reversed.